**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Myron Schellhorn et al.,

          Plaintiffs,

          v.

Timios, Inc.,

          Defendant.

Case No. 2:21-cv-08661-VAP-(JCx)

**Order GRANTING
Motion for Preliminary Approval
of Class Action Settlement
(Doc. Nos. 21-22, 31)**

Plaintiffs Myron Schellhorn et al. ("Plaintiffs") filed a Motion for Preliminary Approval of Class Action Settlement ("Motion") on February 22, 2022.  (Doc. Nos. 21-22, 31.)  Timios Inc. ("Timios") filed no opposition. Having considered the papers filed in support of the Motion, the Court deems this matter appropriate for resolution without oral argument of counsel pursuant to Local Rule 7-15 and **GRANTS** the Motion.

## I.   BACKGROUND

### A.   Procedural History

Plaintiffs Myron Schellhorn, Rodney Allen, and Tedda Allen filed a Class Action Complaint against Timios on November 3, 2021.  (Doc. No. 1.) Plaintiffs Lauren Waters, Jeff Harrington, and David Thompson filed a similar action against Timios on November 4, 2021.  *See Waters, et al. v. Timios*, No. 2:21-cv-08709-VAP-(JCx) (C.D. Cal.).  The Court joined the two

actions, and Plaintiffs filed a First Amended Complaint ("FAC") on March 1, 2021.  (Doc. No. 18.)

The FAC alleges that Timios suffered a data breach between July 18, 2021, and Jul 25, 2021, resulting in the disclosure of Plaintiffs' personal identifiable information ("PII").  (FAC ¶¶ 27-45.)  Accordingly, the FAC asserts the following claims against Timios: 1) negligence; 2) negligence per se; 3) breach of confidence; 4) breach of implied contract; 5) intrusion into private affairs and invasion of privacy; 6) violation of the Illinois Consumer Fraud Act; 7) violations of Illinois' Personal Information Protection Act; 8) violation of Illinois's Security Breach Notification Laws; 9) unjust enrichment; and 10) declaratory judgment.  (*Id.* ¶¶ 180-308.)

The parties engaged in informal settlement negotiations for several months.  (Motion at 2.)  Although the parties engaged private mediator Bennett Picker, Esq., they were able to reach a settlement before mediation.  (*Id.* at 2-3.)  The parties drafted the joint Settlement Agreement ("Settlement Agreement" or "SA") currently before the Court on March 31, 2022.  (*Id.* at 3; SA, Doc. No. 32-1.)

**B.    Settlement Class**

The proposed Settlement Class is defined as:

[A]ll persons to whom Timios mailed notice that between July 19, 2021 and July 25, 2021, Timios was the target of a cyberattack in which third-party criminals gained unauthorized access to Timios'

United States District Court
Central District of California

network, encrypted some of Timios' systems, and may have gained unauthorized access to the personal information of consumers.

(SA § IV 1.27.)  The proposed class consists of approximately 74,755 persons who may have had their PII disclosed because of the data breach. (Motion at 3.)

The Settlement Agreement also proposes a California Settlement Subclass defined as:

> [A]ll persons residing in California between July 19, 2021 and July 25, 2021 to whom Timios mailed notice that between July 19, 2021 and July 25, 2021, Timios was the target of a cyberattack in which third-party criminals gained unauthorized access to Timios' network, encrypted some of Timios' systems, and may have gained unauthorized access to the personal information of consumers.

(SA § IV 1.2.)

**C.    Settlement Terms**

The Settlement Agreement establishes monetary and non-monetary benefits.  (SA § IV 2.1-2.6.)  The monetary benefits consist of: (1) reimbursement of out-of-pocket expenses and lost time of up to $500 per Class Member; (2) reimbursement of extraordinary expenses of up to $3,000 per Class Member; and (3) $50 per California Settlement Subclass

United States District Court
Central District of California

3

member.  (*Id.* §§ 2.1-2.3.)  The non-monetary benefits consist of free identity theft protection services for eighteen months, and for Timios to implement and maintain measures to secure its systems.  (*Id.* §§ 2.4, 2.6.)

Timios will retain Kroll Settlement Administration to serve as Claims Administrator.  (Berry Decl. ¶ 23.)  Notice and administration costs are estimated to cost approximately $86,000.  (*Id.* ¶ 36.)  Class members are to submit Claim Forms within 90 days of preliminary approval, and the Claims Administrator shall accept or reject such Claim Forms within 30 days of receipt.  (SA §§ IV 2.2, 2.5.3.)  If accepted, Class Members have 30 days to accept or reject the offer of payment.  (*Id.* § 2.5.4.)  Class Members may dispute a claim decision with a claims referee, who shall make a ruling within 15 days of the dispute.  (*Id.* § 2.5.5.)  The Claims Administrator will issue checks for valid claims within 60 days of the final approval of the Settlement Agreement, or within 30 days that the claim is approved, whichever is later.  (*Id.* § 8.2.)

The Settlement Agreement entitles each named Plaintiff to a Service Award of $2,500.  (*Id.* § 7.3.)  Class Counsel seeks up to $215,000, approximately 19 percent,[1] of the settlement value for attorneys' fees and costs.  (*Id.* § 7.2; Motion at 8.)

Finally, Plaintiffs and Settlement Class Members release any future related claims against Timios.  (*Id.* § 6.)

---

[1] Plaintiffs estimate the value of the monetary settlement benefits and the identity theft protection services at $1,130,720.  (Motion at 8.)

**D.    Notice Procedures**

Within 14 days of preliminary approval of the Settlement Agreement, Timios will provide the Claims Administrator the Settlement Class Member Information.  (*Id*. § 3.2.)   Within 30 days of preliminary approval, the Claims Administrator will provide the Short Notice Form by email (Ex. 5) or mail the Postcard Notice (Ex. 6) to the Settlement Class.  (SA § IV 3.2.)  The Notice Program will conclude within 45 days of preliminary approval.  (*Id.*)

The Settlement Administrator will establish the Settlement Website containing:

(i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; (v) the operative Amended Class Action Complaint filed in the Litigation; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically.

(*Id.*)  Finally, a toll-free help line shall be established to provide Settlement Class Members with additional information about the settlement.  (*Id.*)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  "[S]trong judicial policy . . .

United States District Court
Central District of California

favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's review of the settlement is meant to be "extremely limited" and should consider the settlement as a whole. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

At the preliminary approval stage, the Court need only consider whether the proposed settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-05198, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. 15-01551, 2016 WL 7479380, at *8 (C.D. Cal. Sept. 12, 2016) ("At the Preliminary Approval phase, the Court need only decide whether the settlement is potentially fair."); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. Apr. 12, 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

### III.    DISCUSSION

**A.    Class Certification**

Under Rule 23(e)(1), as amended December 1, 2018, the Court must direct notice to the class of a class action settlement upon determining that

notice is justified because the Court concludes it will likely be able to approve the settlement and certify the class for purposes of judgment on the settlement. When a plaintiff seeks conditional class certification for purposes of settlement, the court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952-53 (9th Cir. 2003).

Under Rule 23(a), the plaintiff must show the class is sufficiently numerous; there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of those of the class; and the representative parties will fairly and adequately protect the class's interests.  Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes.

Here, Plaintiffs seek certification under Rule 23(b)(3).  Rule 23(b)(3) allows certification where: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  (Motion at 15.)

### 1.      Rule 23(a) Requirements

i.    <u>Numerosity</u>

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  "No exact numerical cut-off is required; rather,

the specific facts of each case must be considered."  *In re Cooper Cos. Inc.*

*Sec. Litig*., 254 F.R.D. 628, 634 (C.D. Cal. Jan. 5, 2009) (citing *Gen. Tel.*

*Co. of Nw., Inc. v. E.E.O.C*., 446 U.S. 318, 330 (1980)).  "As a general

matter, courts have found that numerosity is satisfied when [the] class size

exceeds 40 members."  *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc*.,

311 F.R.D. 590, 602-03 (C.D. Cal. Nov. 16, 2015); *see Tait v. BSH Home*

*Appliances Corp*., 289 F.R.D. 466, 473-74 (C.D. Cal. Dec. 20, 2012).

Additionally, it is not necessary to state the exact number of class members

when the plaintiff's allegations "plainly suffice" to satisfy the numerosity

requirement.  *In re Cooper*, 254 F.R.D. at 634.

Plaintiffs' allegations here satisfy the standard for numerosity.  The

Settlement Class consists of approximately 74,755 persons.  (Motion at 3,

12.)  The Court certainly may infer that more than 40 persons had their PII

disclosed because of Timios's data breach.  *See Moore*, 311 F.R.D. at 602-

03.  Moreover, Timios does not dispute that the proposed class is

numerous.  Accordingly, as requiring the joinder of thousands of plaintiffs

would be impracticable, the Court finds the Class satisfies the numerosity

requirement.

ii.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common

to the class."  The plaintiff must "demonstrate that the class members 'have

suffered the same injury,'" which "does not mean merely that they have all

suffered a violation of the same provision of law."  *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457

U.S. 147, 157 (1982)).  Rather, the plaintiff's claim must depend on a "common contention" that is capable of class wide resolution.  (*Id*.).  This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." (*Id*.).

The issues in this litigation present common questions of law and fact that can be determined on a class wide basis: whether Class Members' PII was compromised in the data breach; whether Timios owed a duty to Plaintiffs and Class members; whether Timios breached its duties; whether Timios unreasonably delayed in notifying Plaintiffs and class members of the material facts of the data breach; and whether Timios violated the common law and statutory violations alleged in the FAC.  (Motion at 12.) Accordingly, the Court finds the Class satisfies the commonality requirement

iii.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Plaintiffs' claims here are typical of the class members' claims because every member of the class, including Plaintiffs, asserts damages based on Timios failure to protect their PII.  (Motion at 13.)  Accordingly, Plaintiffs' claims are "reasonably coextensive" with those of the class.  *See Hanlon*, 150 F.3d at 1020; *see also Reyes v. Experian Info. Sols., Inc*., No.

16-00563, 2019 WL 4854849, at *6 (C.D. Cal. Oct. 1, 2019) ("Because Plaintiff only seeks to represent a class of consumers whose credit reports contained this exact same 'inaccuracy,' the unnamed class members share an identical injury.  Further, Plaintiff's claim is based on the same course of conduct by Defendant as the claims of the unnamed class members" satisfying the typicality requirement).

### iv.   Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires: (1) a lack of conflicts of interest between the proposed class and the proposed class representative, and (2) representation by qualified and competent counsel that will prosecute the action vigorously.  *Staton*, 327 F.3d at 957. The concern in the context of a class action settlement is that there is no collusion between the defendant, class counsel, and the class representatives to pursue their own interests at the expense of the interests of the class.  (*Id*. at 958 n.12).

There is no evidence of a conflict of interest between Plaintiffs and the class.  Plaintiffs' claims are identical to those of the class, and Plaintiffs have every incentive to pursue those claims vigorously.  (Motion at 14.)  Nor is there any evidence that Plaintiffs' counsel will not adequately represent or protect the interests of the class.  Plaintiffs' counsel, M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp., David K. Lietz of Milberg, and Bill Markovits, Paul D. Demarco, and Terence R. Coates of Markovits, Stock & DeMarco, LLC, have extensive experience litigating consumer protection

class actions and have relied on their experience litigating the instant action. (Exs. B-D, Berry Decl. ¶¶ 46-51.)  Counsel vigorously prosecuted this action and satisfy all the criteria for M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp., to be appointed as interim class counsel pursuant to Rule 23(g)(3).  *See, e.g., Reyes*, 2019 WL 4854849, at *7 ("As for Plaintiff's and counsel's willingness to vigorously prosecute this action on behalf of the class, the Court has no doubt. The Court knows only too well how actively this case has been litigated on both sides from its inception in 2016.").  There is also no evidence of conflicts of interest between Plaintiffs and Timios or Plaintiffs' counsel and Timios.

As Plaintiffs satisfy all of the Rule 23(a) criteria, the Court turns to the Rule 23(b) requirements.

### 2.    Rule 23(b)(3) Requirements

Plaintiffs seek preliminary class certification under Rule 23(b)(3). Rule 23(b)(3) applies where the court finds: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See In re Wells Fargo Home Mortg. Overtime Pay Litig*., 571 F.3d 953, 957 (9th Cir. 2009).

### i.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150

F.3d at 1022.  "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)."  (*Id*.).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  (*Id*.).

As discussed above, Plaintiffs demonstrated commonality amongst proposed class members as the central issue in this case is whether Timios used reasonable data security measures to prevent a breach in consumers' PII.  (Motion at 16.)  The only individual determinations, then, are the quantification of damages for each Settlement Class member—and such individual determinations do not defeat class certification.  Plaintiffs thus demonstrate that a common issue predominates over individualized concerns.

ii.   Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.  (*Id*.).

12

1       A class action appears to be superior to other available methods for

2 adjudicating this matter fairly and efficiently.  The potential monetary relief

3 for each Settlement Class Member (up to $3,550 for out-of-pocket

4 expenses, extraordinary expenses, and being part of the California

5 Settlement Subclass) is dwarfed by the cost of litigating on an individual

6 basis.  (SA §§ IV 2.1-2.3.)  Without class certification, it is unlikely that these

7 claims would be litigated at all.  Accordingly, Plaintiffs satisfy Rule 23(b)(3).

8

9 **B.    Fairness, Adequacy, and Reasonableness of the Settlement**

10      Plaintiffs seek preliminary approval of the Settlement Agreement.

11 Rule 23(e) "requires the district court to determine whether a proposed

12 settlement is fundamentally fair, reasonable, and accurate."  *Staton*, 327

13 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026).  To determine whether this

14 standard is met, courts consider factors including "the strength of the

15 plaintiffs' case; the risk, expense, complexity, and likely duration of further

16 litigation; the risk of maintaining class action status throughout the trial; the

17 amount offered in settlement; the extent of discovery completed, and the

18 stage of the proceedings; the experience and views of counsel; . . . and the

19 reaction of the class members to the proposed settlement."  (*Id.* (quoting

20 *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003))).

21

22      At the preliminary approval stage, a full "fairness hearing" is not

23 required. *In re Tableware Antitrust Litig*., 484 F. Supp. 2d at 1079.  Rather,

24 the inquiry is whether the settlement "appears to be the product of serious,

25 informed, non-collusive negotiations, has no obvious deficiencies, does not

26

United States District Court
Central District of California

13

improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." (*Id*.).

1.     Product of Serious, Informed, Non-Collusive Negotiations

To approve the Settlement Agreement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Hanlon*, 150 F.3d at 1027.  Three factors may raise concerns of collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

The Court finds that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (internal quotation marks omitted).  This case was filed on November 3, 2021 (Doc. No. 1), and since then the Parties conducted informal discovery, engaged in numerous negotiations, and reached a settlement. (Motion at 24.)  Moreover, the parties "did not negotiate attorneys' fees until agreement on all substantive portions of the class resolution had been reached" and thus the three *Bluetooth* factors that raise concerns of

United States District Court
Central District of California

collusion are absent here.  (*Id.* at 25.)  Accordingly, this factor weighs in favor of preliminary approval.

### 2.     Obvious Deficiencies

The Court finds that the Settlement Agreement on its face does not have obvious deficiencies, and thus finds that this factor weighs in favor of preliminary approval.

### 3.     Preferential Treatment to Class Representatives or Segments of Class

The proposed Settlement Agreement does not improperly grant preferential treatment to class representatives.  Although the Court has some minor concerns regarding Plaintiffs' service awards—as discussed below—those concerns are insufficient to make this factor weigh against preliminary approval and can be addressed in more detail at the final approval hearing.

### 4.     Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. Nov. 17,  2009).

Moreover, to evaluate whether a settlement is fundamentally fair, adequate, and reasonable, the Court considers the factors that ultimately inform final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  *Harris*, 2011 WL 1627973, at *7 (citing *Hanlon*, 150 F.3d at 1026).

### i.   Strength of Plaintiff's Case and Future Risk

Plaintiffs' FAC alleges claims for: 1) negligence; 2) negligence per se; 3) breach of confidence; 4) breach of implied contract; 5) intrusion into private affairs and invasion of privacy; 6) violation of the Illinois Consumer Fraud Act; 7) violations of Illinois' Personal Information Protection Act; 8) violation of Illinois's Security Breach Notification Laws; 9) unjust enrichment; and 10) declaratory judgment.  (FAC ¶¶ 180-308.).  Although Class Counsel argues it can prove its claims, the Settlement Agreement is reasonable as "data breach cases are among the riskiest and uncertain of all class action litigation." (Motion at 21.)  Accordingly, Plaintiffs and Class Members would face further litigation risks if the case were not settled.  (*Id.*)

As it stands, the Settlement Agreement provides distributions to Class Members on the basis of their expenses and damages, as well as provide Class Members free identity theft protection services for eighteen months. (Motion at 22.)  Given the relative strength of Plaintiffs' claims, and the risks

and costs associated with future complex litigation, the Settlement Agreement's terms appear to be reasonable.  This factor thus favors preliminary approval.

### ii.   Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As noted above, the parties litigated diligently since November 2021, including gathering publicly available information and engaging in informal discovery, *supra*.  Accordingly, the Court finds this factor weighs in favor of preliminary approval.  *See Linney*, 151 F.3d at 1239.

### iii.   Experience and Views of Counsel

As stated above, Class Counsel has ample experience litigating class actions similar to this case and thus have demonstrated the ability to prosecute vigorously on behalf of the class members.  (*See* Exs. B-D, Berry Decl. ¶¶ 46-51.)  Accordingly, the Court finds this factor weighs in favor of preliminary approval.

//

//

//

United States District Court
Central District of California

United States District Court
Central District of California

1

2

iv.     Presence of a Governmental Participant and Reaction of
the Class Members to the Proposed Settlement

3      As there is no governmental participant in this action, and the parties

4   have not yet provided notice to the class members, these factors are

5   inapposite for the purposes of preliminary approval.

6

7

v.     The Amount Offered in the Settlement

8      For a settlement to be fair and adequate, "a district court must

9   carefully assess the reasonableness of a fee amount spelled out in a class

10   action settlement agreement."  *Staton*, 327 F.3d at 963.

11

12

a.     Attorneys' Fees and Costs

13      When evaluating attorneys' fees, the Ninth Circuit holds "the district

14   court has discretion in common fund cases to choose either the percentage-

15   of-the-fund or the lodestar method."  *Vizcaino v. Microsoft Corp.*, 290 F.3d

16   1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec.*

17   *Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)).

18

19      When using the percentage-of-the-fund method, "courts typically set a

20   benchmark of 25% of the fund as a reasonable fee award and justify any

21   increase or decrease from this amount based on circumstances in the

22   record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D.

23   Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d

24   268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or

25   downward based on: (1) the results achieved; (2) the risks of litigation; (3)

26   the skill required and the quality of work; (4) the contingent nature of the fee;

United States District Court
Central District of California

(5) the burdens carried by the class counsel; and (6) the awards made in similar cases.  *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).

Class Counsel here intends to seek an award of attorneys' fees and costs of no more than $215,000, approximately 19 percent, of the settlement value, (SA § IV 7.2; Motion at 8), which is within the Ninth Circuit's 25 percent "benchmark award for attorney[s'] fees."  *Hanlon*, 150 F.3d at 1029.  Given the claims, stage of the action at the time of resolution, results achieved, and other information presented in Plaintiffs' Motion, the Court is likely to determine that approximately 19 percent in attorneys' fees is warranted and reasonable at the final settlement approval.  The Court notes, however, that Class Counsel has not attached any accounting of past costs or expenses.  Thus, the Court will revisit the costs request at the time the parties seek final approval of the settlement.

b.      Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958–59 (9th Cir. 2009).

"The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977.

Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995). "Courts have generally found that $5,000 incentive payments are reasonable." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008) (citations omitted).

Under the proposed Settlement Agreement, each named Plaintiff will receive an award of $2,500. (SA § IV 7.3.) The Court find that the incentive awards of $2,500 to each named Plaintiff are reasonable. *See Alberto*, 252 F.R.D. at 669.

c.   Settlement Administrator Costs

Timios will retain Kroll Settlement Administration ("Kroll") to serve as Claims Administrator. (Berry Decl. ¶ 23.) Plaintiffs selected Kroll after soliciting bids from three claims administrators, and Kroll submitted the most

competitive bid.  (*Id.* ¶ 37.)  Moreover, "Kroll has a trusted and proven track record of supporting thousands of class action administrations, with over 50 years of legal administration experience."  (*Id.*)  Notice and administration costs are estimated to cost approximately $86,000, and Timios shall bear any costs that exceed this amount.  (*Id.* ¶ 36; SA § 9.4.)  Accordingly, the Court is likely to determine that $86,000 in Administrator Costs is reasonable at the final settlement approval.

>                    d.      Conclusion Based on Review of *Hanlon* Factors

As most of the *Hanlon* factors weigh in favor of preliminary approval, the Court finds that the proposed settlement is "within the range of possible approval" and that notice should be sent to class members.  *Vasquez*, 670 F. Supp. 2d at 1125.

Nevertheless, the Court stresses that it is unlikely to approve the litigation costs in their current form at the final approval stage.

**C.    Notice Procedure**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Plaintiff must provide notice that is "timely, accurate, and informative."  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

//

//

//

1.     <u>Notice Form</u>

The Court accepts the proposed notice forms.  The Short Notice Form and the Postcard Form explains: (1) the nature of the claims involved in the case; (2) the essential terms of the Settlement, including the California Settlement Subclass members; (3) the monetary and non-monetary relief available through a valid claim; (4) Class Members' rights to file a claim, to opt-out, or to object to the Settlement, and specifics on the dates for exercising these rights; (5) the time and location of the Final Approval Hearing; (6) an explanation that each Settlement Class Member has the right to appear at the Final Approval Hearing; and (7) the Settlement Website address and a toll-free number where additional information can be obtained.  (Motion at 27-28; Exs. 5, 6.)

The Settlement Website will provide: (1) the Long Notice; (2) the Claim Form; (3) the Preliminary Approval Order; (4) this Settlement Agreement; (5) the operative Amended Class Action Complaint filed in the Litigation; and (6) any other materials agreed upon by the Parties or required by the Court.  The Settlement Website also provides Class Members with the ability to complete and submit the Claim Form electronically.  (SA § IV 3.2.)

The Long Form explains in detail a "summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent

contemplated herein, and the date, time and place of the Final Fairness Hearing." (Ex. 3.)

The Claim Form also explains in detail the nature of the action and terms of the Settlement Agreement, as well as the processes and requirements to submit a claim. (Ex. 2.)

2.  Claims Administration

The Claims Administrator will send notice to Class Members, establish the Settlement Website, establish a toll-free number, accept or reject claims, and issue appropriate payments. Within 14 days of preliminary approval of the Settlement Agreement, Timios will provide the Claims Administrator the Settlement Class Member information. (SA § IV 3.2.) Within 30 days of preliminary approval, the Claims Administrator will provide the Short Notice Form by email (Ex. 5) or mail the Postcard Notice (Ex. 6) to the Settlement Class. (SA § IV 3.2.) Class members shall submit Claim Forms within 90 days of preliminary approval, and the Claims Administrator shall accept or reject such Claim Forms within 30 days of receipt. (*Id.* §§ IV 2.2, 2.5.3.) If accepted, Class Members have 30 days to accept or reject the offer of payment. (*Id.* § 2.5.4.) Class Members may dispute a claim decision with a claims referee, who shall make a ruling within 15 days of the dispute. (*Id.* § 2.5.5.) The Claims Administrator will issue checks for valid claims within 60 days of the final approval of the Settlement Agreement, or within 30 days the claim is approved, whichever is later. (*Id.* § 8.2.)

The Court finds that the notice forms and proposed administration processes are adequate.

**D.    Class Representative and Class Counsel**

As explained above, the Court finds that Plaintiffs will fairly and adequately protect the interests of the class and that proposed class counsel, M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation, is well equipped to represent the class.

Accordingly, the Court designates named Plaintiffs as Class Representative for the Settlement Class and appoints M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation, as Class Counsel.

## IV.    CONCLUSION

For the reasons stated above, most of the factors considered by the Court favor settlement.  Although the Court declines to approve the litigation costs, the proposed settlement is within the range of possible final approval. The Court thus **GRANTS** Plaintiffs' Motion for preliminary approval of class action settlement and conditionally certifies the class for settlement.

Within fourteen (14) calendar days of this Order, Timios shall provide the Claims Administrator the Settlement Class Member List.  Within thirty (30) calendar days of this Order, the Claims Administrator shall disseminate notice using the templates portrayed in Exhibits 5 and 6 of the Settlement Agreement, as well as establish the Settlement Website and the toll-free telephone service.

Class members shall have one-hundred and twenty (120) calendar days from the date of this Order to submit claims, and sixty (60) days from the date of this Order to object or opt out of the settlement.

The final approval hearing will be conducted on October 17, 2022 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated:   5/10/22

Virginia A. Phillips
United States District Judge