M. Anderson Berry (SBN 262879)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com

*Attorneys for Plaintiffs and the Proposed Classes*

# THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRON SCHELLHORN, RODNEY ALLEN, TEDDA ALLEN, LAUREN WATERS, JEFF HARRINGTON, AND DAVID THOMPSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiffs,<br><br>vs.<br><br>TIMIOS, INC.,<br><br>          Defendant. | Case No.: 2:21-cv-08661-VAP-JC<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>**DATE:  OCTOBER 17, 2022**<br>**TIME:  2:00 PM**<br>**COURTROOM:  6TH FLOOR**<br>**JUDGE:        HON. VIRGINIA A. PHILLIPS** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................. ii

TABLE OF AUTHORITIES ........................................................................ iii

I.     INTRODUCTION................................................................................ 1

II.    FACTS AND PROCEDURAL HISTORY................................................. 3

III.   ARGUMENT ...................................................................................... 3

   A. The Requested Fee Amount is Reasonable Under the Precentage-of-
      Fund-Method. ................................................................................. 5

   B. The *Vizcaino* Factors Support the Award Requested ..................... 6

      1. Class Counsel achieved a favroable result for the Class ................. 6

      2. The litigation was risky, complex, and expensive .......................... 8

      3. Class Counsel performed superior quality work to achieve the
         Settlement ................................................................................... 9

      4. Class Counsel worked on a contingent basis ................................ 11

      5. Fees awarded in comparable cases exceed those requested here...... 12

      6. The reaction of the Class suppoerts the fee request........................ 14

   C. A Lodestar Cross-check Confirms the Reasonableness of the Attorneys'
      Fees Requested ............................................................................. 14

      1. Class Counsel's hourly rates are reasonable .................................. 15

      2. The number of hours Class Counsel devoted to the case was
         reasonable ................................................................................... 16

   D. Class Counsel Should be Reimbursed for Their Litgation Expenses.......... 16

   E. The Court Should Grant a Servie Award to Each Class
      Representative .............................................................................. 17

IV.   CONCLUSION................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Wawona Frozen Foods*,
   No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936 (E.D. Cal. May 19, 2017)  13

*Allagas v. BP Solar Int'l, Inc.*,
   No. 314CV00560SIEDL, 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016) ......... 10

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .............. 13

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................... 11

*Blum v. Stenson*,
   465 U.S. 886 (1984) .......................................................................................... 15

*Boyd v. Bank of Am. Corp.*,
   No. SACV 13–0561–DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)...... 13

*Brown v. 22nd Dist. Agric. Ass'n*,
   No. 15-CV-02578-DHB, 2017 WL 3131557 (S.D. Cal. July 24, 2017)........... 12

*Burden v. Select Quote Ins. Servs.*, No. C,
   10-5966 LB, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) ............................... 13

*Caudle v. Bristow Optical Co.*,
   224 F.3d 1014 (9th Cir. 2000) .......................................................................... 16

*Ching v. Siemens Indus.*,
   No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .......... 12

*Dearaujo v. Regis Corp.*,
   No. 2:14-cv-01408-KJM-DB2017, 2017 WL 3116626 (E.D. Cal. July 21, 2017)
   ............................................................................................................................ 13

*Emmons v. Quest Diagnostics Clinical Labs, Inc.*,
   No. 1:13-cv00474-DAD-BAM, 2017 WL 749018 (E.D. Cal. Feb. 24, 2017) .. 13

*Fernandez v. Victoria's Secret Stores, LLC*,
   No. CV 06-04149 MMM, 2008 WL 8150856 (C.D. Cal. July 21, 2008).......... 13

*Franco v. Ruiz Food Prods., Inc.*,
   No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ......... 13

iii

*Garcia v. Gordon Trucking, Inc.*,
     No. 1:10-cv-324-AWI-SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ..... 13

*Gaston v. FabFitFun, Inc.*,
     No. 2:20-CV-09534-RGKE, 2021 WL 3362028 (C.D. Cal. Apr. 2, 2021) ....... 13

*Graham v. Capital One Bank (USA), N.A.*,
     No. SACV 13-00743-JLS, 2014 WL 12579806 (C.D. Cal. Dec. 8, 2014) ......... 6

*Hammond v. The Bank of N.Y. Mellon Corp.*,
     No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ....................... 9

*Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ....................................................................... 5, 10

*Hawthorne v. Umpqua Bank*,
     No. 11-6700, 2015 WL 1927342 (N.D. Cal. Apr. 28, 2015) ............................ 18

*In re Am. Apparel, Inc. S'holder Litig.*,
     No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014). 10

*In re Anthem, Inc. Data Breach Litig.*,
     No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ..... 9, 13

*In re Apple Inc. Device Performance Litig.*,
     No. 5:18-MD-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ....... 14

*In re Capacitors Antitrust Litig.*,
     No. 14-cv-03264, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) .................... 17

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
     No. 1:17-MD-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020).................. 8, 9

*In re Heritage Bond Litig.*, No. 02-ML-1,
     475, 2005 WL 1594389 (C.D. Cal. June 10, 2005).................................. 6, 10, 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
     926 F.3d 539 (9th Cir. 2019) ............................................................................. 5

*In re Lenovo Adware Litig.*,
     No. 15-md-0624, 2019 WL 1791420 (N.D. Cal. April 24, 2019) .................... 17

*In re Linkedin User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015)....................... 14

*In re Mego Fin. Corp. Sec. Litig.*,
     213 F.3d 454 (9th Cir. 2000) ........................................................................... 18

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 6, 8

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................... 5, 18

*In re Pac. Enters. Secs. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................... 13

*In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab.
    Litig.*,
    No. 8:10-ML-2151, 2013 WL 12327929 (C.D. Cal. July 24, 2012) ............. 9, 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ....................................................... 11, 12, 15

*In re Yahoo! Inc. Customer Data Breach Litig.*,
    No. 16-MD-02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ................... 17

*Kissel v. Code 42 Software Inc.*,
    No. 8:15-cv-01936, 2018 WL 6113078 (C.D. Cal. Feb. 20, 2018) ......... 6, 11, 16

*Knight v. Red Door Salons, Inc.*,
    No. 08–01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................ 10

*Laffitte v. Robert Half Int'l, Inc.*,
    1 Cal. 5th 480, 376 P.3d 672 (2016) ............................................... 5

*Lee v. JPMorgan Chase & Co.*,
    No. 13-cv-511-JLS, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) ................ 13

*Linney v. Cellular Alaska P'ship*,
    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d
    1234 (9th Cir. 1998) ............................................................... 8

*Mejia v. Walgreen Co.*,
    No. 2:19-CV-00218 WBS AC, 2021 WL 1122390 (E.D. Cal. Mar. 24, 2021). 15

*Pierce v. Rosetta Stone, Ltd.*,
    No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ................ 2

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................... 17

*Romero v. Producers Dairy Foods, Inc.*,
    No. 1:05-cv-0484-DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ........... 13

*Rutti v. Lojack Corp., Inc.*,
No. SAVC 06-350 DOC, 2012 WL 3151077 (C.D. Cal. July 31, 2012).......... 16

*Singer v. Becton Dickinson Co.*,
No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ...... 13

*Smith v. CRST Van Expedited, Inc.*,
No. 10-CV-1116-IEG (WMC), 2013 WL 163293 (S.D. Cal. 2013) ................ 13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ....................................................... 5, 7, 14

*Stuart v. Radioshack Corp.*,
No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010)................ 13

*Syed v. M-I, LLC*,
No. 1:12-cv-1718-DAD-MJS, 2017 WL 3190341 (E.D. Cal. July 27, 2017) ... 13

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995)................................................... 18

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ................................................. passim

*Williams v. MGM-Pathe Comms. Co.*,
129 F.3d 1026 (9th Cir. 1997) ......................................................... 13

*Wing v. Asarco Inc.*,
114 F.3d 986 (9th Cir. 1997) ......................................................... 11

*Wren v. RGIS Inventory Specialists*,
No. 06-cv-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)................ 13

*Zepeda v. PayPal, Inc.*,
No. C-10-2500, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)........................ 10

**Statutes**

815 ILCS 530 ............................................................................. 3

815 ILCS 530/10 ........................................................................ 3

815 Ill. Comp. Stat. § 505/1 ....................................................... 3

Rules

Fed. R. Civ. P. 23(e).................................................................. 5

Fed. R. Civ. P. 41(a)(1)(A)(i) ...................................................................... 4

Federal Rule of Civil Procedure 23(h)....................................................... 5

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation, § 21.71, p. 336 (4th ed. 2022)....................................................................................................... 6

## I.    INTRODUCTION

Counsel for Plaintiffs Myron Schellhorn, Rodney Allen, Tedda Allen, Lauren Waters, Jeff Harrington, and David Thompson (collectively, "Plaintiffs") negotiated a proposed settlement resolving the claims of Timios customers who had their personally identifiable information ("PII") compromised as a result of a data breach of Defendant's computer system. The proposed settlement provides substantial benefits to the 74,755 Class Members, including compensation for ordinary out-of-pocket losses up to $500, lost time at a rate of $20 per hour up to three hours, and for extraordinary out-of-pocket losses up to $3,000 per Settlement Class Member. Defendant will also provide monetary payment to the California Settlement Subclass for California statutory damages in the amount of $50 each. There is no overall cap on the recovery, meaning that every one of the 74,755 Class Members could claim these amounts without any pro rata reduction. A conservative estimate of the value of these benefits is $373,775 in monetary settlement benefits. ECF 23, Declaration of M. Anderson Berry ISO Ps' Unopposed Mot. for Preliminary App. Of Class Action Settlement ¶ 39, n.2.

Defendant will also pay to have all Settlement Class members provided with free access to Aura's Financial Shield Services for a period of eighteen (18) months from the Effective Date. Financial Shield Services from Aura, like those provided for by the Settlement Agreement, retail for $135 per year per person. ECF 23. Thus, the value of these services for 18 months is at least $202.50 per person. *Id*. Because all 74,755 Settlement Class Members who submit a Valid Claim will receive this benefit in addition to any monetary recovery, the value of this benefit obtained for the Class is valued at over $15 million ($202.50 x 74,755 class members) given that is approximately what it would cost for each class member to individually purchase this product on the open. However, even if only 5 percent of the Class (or approximately 3,738 class members) submit claims for the Financial Shield

Services, the value of that benefit equates to a conservative value of $756,945. *Id.*
¶ 21.

Defendant will also separately pay approximately $86,000 for Claims
Administration; as well as separately paying for service awards to the Class
Representatives and attorneys' fees and expense reimbursement as approved by the
Court.

Finally, Plaintiffs and Class Members have and will continue to receive a
benefit from substantial business practice changes aimed at preventing further
unauthorized access to their sensitive personally identifiable information ("PII")
entrusted to Timios.

This hard-struck bargain did not come easily. Rather, it took considerable
time, effort, and skill from Class Counsel. To reach this result, Class Counsel
expended extensive resources to investigate this case, interviewed potential
plaintiffs, drafted the complaints and the amended complaint, consolidated cases
into a single class action lawsuit, engaged in months long settlement negotiations,
and prepared for mediation, before ultimately achieving the final result for the
Class.

Plaintiffs and their Counsel now seek an award of attorneys' fees, expenses,
and service awards. The Settlement Agreement provides that Defendant will pay
Class Counsel combined attorneys' fees and expenses, as approved by this Court,
up to $215,000. Based upon the conservative valuations of the Settlement set out
above, the fees requested represent approximately 19% of the benefit to the Class.
This fee request is also fully supported by a lodestar cross-check. Importantly,
Defendant's payment of attorneys' fees, expenses, and service award will not
reduce any of the settlement benefits available to the Class.

The Settlement Agreement further provides that Defendant will pay a $2,500
service award to each Plaintiff as compensation for his or her time and efforts
participating in the case. Courts routinely approve such awards as "presumptively

2

reasonable." *Pierce v. Rosetta Stone, Ltd*., No. C 11-01283 SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013) ("In this district, a $5,000 payment is presumptively reasonable.") (citing cases).

As discussed more fully below, the requested fee, expense, and service awards are reasonable and should be approved.

## II.    FACTS AND PROCEDURAL HISTORY

This matter concerns a putative class action arising out of an alleged Data Incident suffered by Timios between July 19, 2021 and July 25, 2021. The cyber criminals responsible for the Data Incident uploaded a virus onto Timios's systems, encrypting Timios's data, including personal identifiable information ("PII") of certain Timios customers and employees. Plaintiffs allege, but Timios denies, that, as a result of the Data Incident, unauthorized users accessed Representative Plaintiffs' and Timios's current and former customers' and employees' PII including Social Security numbers, driver's license numbers, financial account information, medical information and/or health insurance information.

On or about October 8, 2021, Timios notified approximately 74,755 individuals of the Data Incident. Timios offered these individuals only one year of free credit and identity monitoring services as a result of the Data Incident.

Plaintiffs brought this action on behalf of all persons whose PII Plaintiffs allege was compromised as a result of Timios's failure to: (i) adequately protect PII; (ii) warn of its inadequate information security practices; and (iii) effectively monitor its network for security vulnerabilities and incidents. Plaintiffs allege that Timios's conduct amounts to negligence and violates federal and state statutes. Plaintiffs allege that they and Class Members have suffered injury as a result of Timios's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including but not limited to lost time, (iv) deprivation of rights

they possess under the Illinois Consumer Fraud Act (815 Ill. Comp. Stat. § 505/1, *et seq.*), Illinois Personal Information Protection Act (815 ILCS 530, *et seq.*), Illinois Security Breach Notification Laws (815 ILCS 530/10), and (v) the continued and certainly an increased risk to their PII, which remains in Timios's possession and is subject to further unauthorized disclosures so long as Timios fails to undertake appropriate and adequate measures to protect the PII.

Plaintiffs Myron Schellhorn, Rodney Allen, and Tedda Allen filed this action on November 3, 2021. The next day, November 4, 2021, a separate putative class action involving the same Data Incident was filed in this Court by Plaintiffs Lauren Waters, Jeff Harrington, and David Thompson. *See Waters, et al. v. Timios*, Case No. 2:21-cv-08709-VAP-JC (C.D. Cal.) ("*Waters* Action"). Shortly thereafter, counsel for Plaintiffs in the two actions decided it was appropriate to join together in an effort to conserve the resources of the parties and Court. *See* Exhibit 1, the Declaration of M. Anderson Berry ISO Plaintiffs' Mot. for Attorneys' Fees, Expenses, and Service Awards ("Berry Decl.") ¶ 19. Accordingly, pursuant to stipulation of the Parties and approval of the Court, on March 1, 2022, the First Amended Class Action Complaint ("FAC")" was filed in this action naming the Plaintiffs from both this and the *Waters* Action. Then, on March 24, 2022, the *Waters* Action was voluntarily dismissed under Fed. R. Civ. P. 41(a)(1)(A)(i).

Over the course of several months, the Parties engaged in informal, sometimes contentious, settlement negotiations. The parties then agreed to participate in early mediation. The parties engaged Bennett Picker, Esq., a well-regarded private mediator with considerable experience mediating data breach class actions, to preside over the mediation. With the mediation date looming, the parties continued to rigorously pursue settlement negotiations and were able to reach a settlement in principle on almost all terms, except for attorneys' fees and expenses. The parties then took several weeks to finalize the full scope of the settlement agreement including attorneys' fees and expenses. The parties executed the Settlement Agreement on March 31, 2022.

1
2
3
4
5
6
7

Preliminary Approval was granted on May 10, 2022. Preliminary Approval Order, ECF No. 45. Class Notice subsequently issued on June 9, 2022. The Class Notice advised Class Members that Class Counsel will request the Court's approval of an award for attorneys' fees and reasonable costs and expenses of up to $215,000, and service awards of $2,500 per named plaintiff. The objection deadline is August 8, 2022 (60 days after the Notice Commencement Date). To date, there have been no objections.

8

### III.    ARGUMENT

9
10
11
12
13
14
15
16
17
18

Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). "Courts in this circuit determine attorney's fees in class actions using either the lodestar method or the percentage-of recovery method." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). In deciding whether the requested fee amount is appropriate, the Court's role is to determine whether such amount is "'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).

19
20
21
22
23
24
25
26
27

Where a class settlement results in the creation of common benefits, district courts may use either—or both—the "percentage-of-the-recovery" or the "lodestar-multiplier" method to determine a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "The percentage method 'is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.'" *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 490, 376 P.3d 672, 677 (2016) (citation omitted). Here, the requested fee is fair, reasonable, and adequate under the percentage-of-recovery approach.

28

*///*

### A. The Requested Fee Amount is Reasonable Under the Percentage-of-Fund Method.

Under the percentage approach, class counsels' fees are calculated as a percentage of the common benefits generated through their efforts. In the Ninth Circuit, the "benchmark" percentage is 25%. *Vizcaino*, 290 F.3d at 1048-50; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). Here, Class Counsel's request for a fee award that represents approximately 19% of the Settlement benefit is reasonable.

### B. The *Vizcaino* Factors Support the Award Requested.

In determining the appropriateness of a fee award, the Ninth Circuit directs courts to consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel v. Code 42 Software Inc.*, No. 8:15-cv-01936, 2018 WL 6113078, at *4 (C.D. Cal. Feb. 20, 2018). These factors support Class Counsel's fee request.

#### 1. Class Counsel achieved a favorable result for the Class.

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Graham v. Capital One Bank (USA), N.A.*, No. SACV 13-00743-JLS, 2014 WL 12579806, at *5 (C.D. Cal. Dec. 8, 2014) (citing *In re Omnivision*, 559 F. Supp. 2d at 1046); *see also In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594389 at *8 (C.D. Cal. June 10, 2005) ("result achieved is a major factor" in making fee award); *Vizcaino*, 290 F.3d at 1049; Federal Judicial Center, Manual for Complex Litigation, § 21.71, p. 336 (4th ed. 2022) (the "fundamental focus is the result actually achieved for class members") (citation omitted).

Here, the Settlement provides a range of recovery the Class Representatives and Settlement Class Members likely would have recovered at trial, and that the

Court previously held "appear[s] to be reasonable." ECF 45 at 17. Settlement Class Members can receive compensation for ordinary unreimbursed out-of-pocket losses amounting to $500, including up to three (3) hours at $20 per hour of lost time; up to $3,000 per claim for extraordinary out-of-pocket expenses that occurred as a result of the Data Incident; $50 in payment for California Statutory Claims to the members of the California Settlement Subclass; and eighteen (18) months of Aura Financial Shield Services providing credit monitoring, fraud coverage, identity theft protection, and a $1,000,000 insurance policy protecting each subscribing Class Member. S.A., §§ 2.1-2.4. In addition to the foregoing settlement benefits, Defendant agreed to implement and/or maintain certain reasonable steps to adequately secure its systems and environments, including taking the steps listed in the confidential declaration filed under seal. *See* ECF 27-3. These changes will benefit those members of the Settlement Class whose information remains in Timios's possession, and also other customers whose information is provided to Timios in the future.

As explained in Plaintiffs' Motion for Preliminary Approval, Plaintiffs believe that they would succeed in litigation and be able to recover damages on behalf of the Class. However, Class Counsel recognizes that the range of potential litigation outcomes is large. The scope of damages would depend in large part on the scope of class certification, whether various theories of damages would be accepted by the Court (i.e., benefit of the bargain and loss of value of PII theories), and which causes of action survive. Whether the case would be litigated to a favorable outcome and the amount obtained through continued litigation are not certain, and the case is subject to numerous risks. By settling and paying Class Members now, practical remedies that have been absent become imminently available. Even if Plaintiffs achieved a successful judgment, relief to Class Members would likely be forestalled for years following the exhaustion of appeals. Based on the size of the breach and the substantial litigation risks, the Settlement

presents a robust relief package and valuable outcome for the Class compared to other recent data breach class action settlements.

Class Counsel also achieved substantial non-monetary benefits for the Class. The Ninth Circuit and other courts have repeatedly held that where, as here, class counsel achieves significant non-monetary benefits, the court "should consider the value of [such] relief … as a relevant circumstance" in determining what percentage of the settlement benefits should be awarded as reasonable fees. *Staton*, 327 F.3d at 974 (internal quotation marks omitted); *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (granting fee award of 1/3 of common fund where settlement provided additional non-monetary relief).

The Settlement promises significant remedial measures that Timios has agreed to implement as a result of this litigation, all of which will benefit all Class Members, whether or not they submit a Claim Form for monetary relief. The results achieved here are substantial, and support Class Counsel's fee request.

## 2. The litigation was risky, complex, and expensive.

Risk is a critical factor in determining a fair fee award. *In re Omnivision*, 559 F. Supp. 2d at 1046-47 ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.") (citing *Vizcaino*, 290 F.3d at 1048).

As the Court recognized in the Preliminary Approval Order, data breach cases are among the riskiest and most uncertain of all class action litigation. ECF 45 at 16. Such cases are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions). This case is no exception to that rule. Timios has emphatically

denied Plaintiffs' allegations of wrongdoing, and in continued litigation will vigorously defend against Plaintiffs' claims. It involves complicated and technical facts, highly skilled opposing counsel, and numerous contested issues on class certification and substantive defenses. There are numerous substantial hurdles that Plaintiffs would have had to overcome before the Court might find a trial appropriate.

Given the early stage of the litigation, the legal sufficiency of Plaintiffs' pleading was not tested by a motion to dismiss. Data breach cases, particularly, face substantial hurdles in surviving even past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant expenses. As in any data breach class action, establishing causation and damages on a class-wide basis is largely unchartered territory and full of uncertainty.

As in any litigation, Plaintiffs faced a risk that any of these defenses might succeed. Plaintiffs also faced uncertainty with respect to obtaining and maintaining class certification. Success at class certification has been mostly nonexistent in data breach cases. Even if this Court had granted in full Plaintiffs' motion for class certification, the inherent risks attendant to trying a data breach class action would have only magnified the difficult legal questions at issue here. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax*, 2020 WL 256132, at *33. Although Plaintiffs believe they would have prevailed in this action, a verdict for the defense was entirely possible.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged,

particularly in the area of damages. While Plaintiffs believe they could overcome these challenges, any of these defenses, if successful, could end the case entirely and result in the Settlement Class Members receiving nothing at all. This factor weighs in favor of the appropriateness of the requested fee award.

### 3. Class Counsel performed superior quality work to achieve the Settlement.

"Courts have recognized that the 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML-2151, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2012) (quoting *Knight v. Red Door Salons, Inc.*, No. 08–01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)). When evaluating this factor, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage*, 2005 WL 1594389, at *12 (citations omitted). As set forth above, the results achieved are excellent.

Moreover, in setting fee awards, courts also consider counsel's experience and skill. *Hanlon*, 150 F.3d at 1029. Class Counsel's skill and experience in complex class action litigation also favor the requested fee award here. The descriptions of the backgrounds of Class Counsel demonstrate that Class Counsel are experienced in the highly specialized field of class action litigation, well credentialed, and equal to the difficult and novel tasks at hand. Berry Decl., at Exhibits B-E. Class Counsel's fee request is commensurate with that experience, which they were able to leverage to procure the settlement. The skill demonstrated by Class Counsel in developing the Complaints, coordinating both the cases, developing the Amended Complaint, and negotiating and settling the action early further supports the fees requested. *See Vizcaino*, 290 F.3d at 1050, n.5; *Zepeda v. PayPal, Inc.*, No. C-10-2500, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's consumer class action expertise allowed for a result that "would

have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the settlement); *Allagas v. BP Solar Int'l, Inc.*, No. 314CV00560SIEDL, 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (class counsel that were "highly experienced in prosecuting and settling complex class actions" factors in favor of requested fee).

Class Counsel were also equal to the experience and skill of the lawyers representing Timios, a factor to be considered here. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Defendants were represented in this case by a national, highly respected law firm (Baker & Hostetler LLP) with significant resources and substantial experience defending consumer and data breach class actions. This factor, therefore, weighs in favor of the requested fee award.

### 4. Class Counsel worked on a contingent basis.

The Ninth Circuit has confirmed that a fair fee award must include consideration of the contingent nature of the fee. *See, e.g., Vizcaino*, 290 F.3d at 1050. Courts long have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work. *See, e.g., In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.");

*Vizcaino*, 290 F.3d at 1051 (observing courts reward successful class counsel in contingency cases "by paying them a premium over their normal hourly rates").

This factor deserves particular weight under the unique circumstances of this matter. If Class Counsel had been able to negotiate a fee directly with Class Members, a 25% contingent fee would have been eminently reasonable, if not low, for a case this complex, risky, and difficult.

"Attorneys are entitled to a larger fee award when their compensation is contingent in nature." *In re Toyota*, 2013 WL 12327929, at *32 (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel*, 2018 WL 6113078, at *5. "[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). The potential of receiving little or no recovery in the face of increasing risk weighs in favor of the requested fee. *See In re Wash. Pub. Power*, 19 F.3d at 1299; *Ching v. Siemens Indus.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-CV-02578-DHB, 2017 WL 3131557, at *8 (S.D. Cal. July 24, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award").

Here, Defendant adamantly denied (and continues to deny) any wrongdoing, much less a legal entitlement to class certification or any recovery. The path to establishing liability was particularly challenging given these risks. Class Counsel expended significant resources despite the genuine risk that they would never be compensated at all—not only in this litigation, but also with competing cases in

other Districts that could have settled without Class Counsel foregoing that other work to focus on this case. Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and agreeing that they would only receive a fee if there was a recovery. To date, Class Counsel have received no compensation at all litigating this case on behalf of the Class. Moreover, Class Counsel faced a Defendant with ample resources to vigorously fight the litigation, represented by experienced counsel. The risk of non-recovery is sufficiently substantial to justify the instant fee request.

### 5. Fees awarded in comparable cases exceed those requested here.

Comparing the requested fees to awards in similar cases highlights the reasonableness of this application. "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484-DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)). "Under the percentage method, California has recognized that most fee awards . . . are 33 percent …." *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. 2013). Federal courts in the Ninth Circuit routinely follow California's approach, awarding percentage recoveries in excess of the 25% benchmark.[1]

---

[1] *See, e.g., In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% award); *Williams v. MGM-Pathe Comms. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (same); *Syed v. M-I, LLC*, No. 1:12-cv-1718-DAD-MJS, 2017 WL 3190341, at *8 (E.D. Cal. July 27, 2017) (awarding one-third of $7 million common fund); *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-DB2017, 2017 WL 3116626, at *13 (E.D. Cal. July 21, 2017) (awarding one-third of common fund); *Bennett v. SimplexGrinnell LP*, No. 11-cv-1854-JST, ECF No. 278, at 11 (N.D. Cal. Sept. 3, 2015) (awarding 38.8% of common fund); *Lee v. JPMorgan Chase & Co.*, No. 13-cv-511-JLS, 2015 WL 12711659, at *8-9 (C.D. Cal. Apr. 28, 2015) (awarding one-third of common fund); *Boyd v. Bank of Am. Corp.*, No. SACV 13–0561–DOC (JPRx), 2014 WL 6473804, at *10-11 (C.D. Cal. Nov. 18, 2014) (same); *Burden v. Select Quote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (same); *Barbosa v. Cargill Meat Sols. Corp.*, 297

This Court and its sister district courts routinely grant requests for attorneys' fees that are in line with the 25% benchmark. *See, e.g., Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGKE, 2021 WL 3362028, at *8 (C.D. Cal. Apr. 2, 2021) (permitting counsel fees request to be up to 25% of Settlement Fund, "which is at the benchmark for a reasonable fee award."); *In re Anthem*, 2018 WL 3960068, at *16 (approving fee award of 27% of fund); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (finding benchmark fee award of amounting to 25% of the settlement fund was appropriate); *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2021 WL 1022866, at *9 (N.D. Cal. Mar. 17, 2021) (granting fee award request equal to 26% of the settlement).

Here, the fee requested represents approximately 19% of the settlement value provided to the Class. This percentage is calculated using the conservative estimate set forth above about the value of the automatic Aura Financial Shield benefit ($756,945.00), the $373,775 in monetary settlement benefits, and the value of the equitable measures negotiated. It does not include the cost of settlement administration ($86,000) or the requested attorneys' fees ($215,000) themselves, both of which are also benefits to the Class. *Staton*, 327 F.3d at 975 ("The post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class.") If these amounts were included, the percentage of the total

---

F.R.D. 431, 454 (E.D. Cal. 2013) (same); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *25 (E.D. Cal. Nov. 27, 2012) (same); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-324-AWI-SKO, 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012) (same); *Singer v. Becton Dickinson Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33% and citing two prior, similar Southern District awards); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *8 (N.D. Cal. Aug. 9, 2010) (awarding one-third of common fund); *Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149 MMM, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34% of common fund); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *9 (E.D. Cal. May 19, 2017) (awarding 33% of fund); *Emmons v. Quest Diagnostics Clinical Labs, Inc.*, No. 1:13-cv00474-DAD-BAM, 2017 WL 749018, at *9 (E.D. Cal. Feb. 24, 2017) (awarding 33% of common fund); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *27-28 (N.D. Cal. Apr. 1, 2011) (awarding 42% of $27 million fund).

benefit to the Class drops to 15%. Both of these methods to value the Settlement benefits shows Plaintiffs' attorneys' fee and cost reimbursement request to be more than reasonable and below the 25 percent "benchmark." *See Vizcaino*, 290 F.3d at 1048-50. Accordingly, fee awards in comparable cases support the requested fee here.

### 6. The reaction of the Class supports the fee request.

The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable. *See In re Heritage*, 2005 WL 1594389, at *15. As of the filing of this motion, Class Counsel is aware of no objections out of approximately 74,755 class members. This is true even though the amount of fees Class Counsel intended to request was publicized in the notice to the Class. *See* ECF 22-5 (Short Notice).

### C. A Lodestar Cross-check Confirms the Reasonableness of the Attorneys' Fees Requested.

Application of the lodestar method as a cross-check—or even as a preliminary method of calculating fees—confirms the reasonableness of the fees requested here. *See Vizcaino*, 290 F.3d at 1050-51 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The accompanying declaration of Class Counsel sets forth the hours of work and billing rates used to calculate the lodestar here. As described in the declaration, Plaintiffs' Counsel and their respective staffs have devoted a total of approximately 236.6 hours to this litigation and have a total lodestar to date of $151,734.85. Berry Decl. ¶ 39. This represents a 1.42 multiplier to support the requested fee and expense request of $215,000. *Id*. Courts in the Ninth Circuit routinely approve similar and much higher multipliers. *Mejia v. Walgreen Co.*, No. 2:19-CV-00218 WBS AC, 2021 WL 1122390, at *8 (E.D. Cal. Mar. 24, 2021) (discussing court approval of lodestar multipliers from 2.0 to 4.5 and noting that multipliers "between 3 and 4.5 have become more

common") (citations omitted). All of the Plaintiffs' Counsel time was reasonable and necessary for the prosecution of this action. Class Counsel took meaningful steps to ensure the efficiency of their work. Berry Decl. ¶ 33. And, as explained further below, these amounts do not include the additional time that Class Counsel will have to spend through the Final Approval Hearing and beyond.

### 1. Class Counsel's hourly rates are reasonable.

In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). Courts apply each biller's current rates for all hours of work performed, regardless of when the work was performed, as a means of compensating for the delay in payment. *In re Wash. Pub. Power*, 19 F.3d at 1305.

Class Counsel here are experienced, highly regarded members of the bar. They have brought to this case extensive experience in the area of consumer class actions and complex litigation. Berry Decl. ¶¶ 3-9, Exhibit B-E. Class Counsel's customary rates are in line with prevailing rates in this District, have been approved by courts in this District and other courts, and are in line with the rates charged by contemporaries in the data breach bar. Berry Decl. ¶ 26.

### 2. The number of hours Class Counsel devoted to the case was reasonable.

The number of hours that Class Counsel have billed is reasonable. *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (counsel entitled to recover for all hours reasonably expended). Class Counsel expect to maintain a high level of oversight and involvement in this case, and will continue to incur significant amounts of time given the future work still needed for completion of the Settlement, including: preparing the final approval motion, attending the final approval hearing, responding to any requests for exclusion or objections and filing any replies in

support of final approval, and addressing any appeals. Counsel estimates that another 50-75 hours will be expended to bring this case to final approval. Berry Decl. ¶ 42.

**D. Class Counsel Should be Reimbursed for Their Litigation Expenses.**

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Kissel*, 2018 WL 6113078, at *6. "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp., Inc.*, No. SAVC 06-350 DOC, 2012 WL 3151077, *12 (C.D. Cal. July 31, 2012).

Here, Settlement Class Counsel request reimbursement of expenses of $2,531.71. Berry Decl., ¶ 38. This amount does not include internal and other additional costs that Class Counsel incurred in this litigation but, in an exercise of discretion, do not seek to recover. If awarded by the Court, the expenses would be part of (not in addition to) the $215,000 in combined fees and expenses requested here.

The attached declaration details Settlement Class Counsel's actual out-of-pocket costs. These expenditures were necessary to Settlement Class Counsel's prosecution of the action and are particularly reasonable given the complexities of this case. Such costs are regularly billed to clients in hourly fee cases, and routinely awarded in contingency fee cases. *See, e.g., In re Yahoo! Inc. Customer Data Breach Litig.*, No. 16-MD-02752, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) (approving reimbursement of expenses related to expert witness fees, case-related travel, transcript fees, document management, copying, mailing, and serving documents, operation of a call center to respond to Settlement Class Member inquiries, electronic research, and filing and court fees); *In re Capacitors Antitrust Litig.*, No. 14-cv-03264, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21,

2018) ("Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs.") (citations omitted); *In re Lenovo Adware Litig*., No. 15-md-0624, 2019 WL 1791420, at *9 (N.D. Cal. April 24, 2019) (reimbursing counsel's "professional service fees (experts, investigators, accountants), travel fees, and discovery-related fees").

### E. The Court should grant a Service Award for each Class Representative.

Class Counsel also request that the Court approve service awards in the amount of $2,500 for each of the six Class Representative ($15,000 total). Service awards are typical in class actions, and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009).

Each of the Plaintiffs expended considerable effort on behalf of the Class by, among other things, (1) meeting with Class Counsel at the outset of the case; (2) assisting with investigation of the facts; (3) reviewing the complaint prior to filing; (4) and consulting with Class Counsel during the litigation and settlement negotiations. Their commitment to the Class's interests and desire to remedy these issues, not just for themselves, but also the entire Class, was essential to the successful and timely prosecution of this class action and, in Class Counsel's view, warrants recognition in the form of the service awards requested. Their commitment is notable given the modest size of their personal financial stakes in the matter. *See Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995) ("In exchange for his participation, [named plaintiff] will not receive great personal benefit. He owns a moderately sized truck stop and his claim makes up only a tiny fraction of the common fund.").

The $2,500 service awards sought will not affect the benefits provided to any of the Class Members and fall at the lower end of the spectrum of amounts awarded in comparable cases. *See, e.g., Hawthorne v. Umpqua Bank*, No. 11-6700, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) ("Many courts in the Ninth Circuit have also held that a $5,000 incentive award is 'presumptively reasonable.'") (citation omitted); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (service awards of $5,000); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 (approving service awards of $5,000 to class representatives in a consumer case). This Court has already found the amounts requested to be "reasonable." ECF 45 at 20.

In light of the Class Representatives' willingness to step forward on behalf of consumers on a class-wide basis, the Court should grant the requested Service Awards.

**IV. CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion for entry of an Order approving Class Counsel's request for: (i) an attorneys' fees and expense reimbursement award in the amount of $215,000.00; and (ii) payment of incentive awards of $2,500 to each of the six Class Representatives.

Date: July 25, 2022                    Respectfully Submitted,


                                       */s/ M. Anderson Berry*
                                       M. ANDERSON BERRY (SBN 262879)
                                       **CLAYEO C. ARNOLD,**
                                       **A PROFESSIONAL LAW CORP.**
                                       865 Howe Avenue
                                       Sacramento, CA 95825
                                       Tel: (916) 239-4778
                                       aberry@justice4you.com
                                       *Attorney for Plaintiffs and the Class*

19