M. Anderson Berry (SBN 262879)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com

*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRON SCHELLHORN, RODNEY ALLEN TEDDA ALLEN, LAUREN WATERS, JEFF HARRINGTON, and DAVID THOMPSON, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>TIMIOS, INC.,<br><br>          Defendants. | Case No. 2:21-cv-08661-VAP-JC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     October 17, 2022<br>Time:    2:00 p.m.<br>Courtroom:  6A<br>Judge:    Hon. Virginia A. Phillips |

# **TABLE OF CONTENTS**

I.      INTRODUCTION………………………………………………..    1

II.     BACKGROUND……………………………………………....    2

    A.    Plaintiffs' Allegations and Claims……………………………..    3

    B.    The Case Litigation and Settlement……………………………    3

    C.    Preliminary Approval……………………………………...    4

    D.    Notice Period……………………………………………    4

III.    THE SETTLEMENT TERMS…………………………………...    5

    A.    Proposed Settlement Class ............................................................    5

    B.    Settlement Benefits – Monetary Relief .........................................    5

    C.    Fraud Protection Settlement Benefits – Aura/Panga Financial Shield....    7

    D.    Equitable Settlement Terms/Injunctive Relief ...............................    8

    E.    Attorneys' Fees and Expenses ......................................................    8

    F.    Service Awards to Representative Plaintiffs....................................    9

    G.    Notice to the Class……………………………………………...    9

    H.    Claims, Requests for Exclusion and Objections .............................    10

    I.    Settlement Notice and Administration Expenses………………..    10

IV.    ARGUMENT .....................................................................................    11

    A.    The Settlement Should Be Finally Approved…………………..    11

        1.    The Strength of Plaintiffs' Case ...................................    11

        2.    The Risk, Expense, Complexity, and Likely Duration of
           Further Litigation …………………………………...    12

        3.    The Risk of Maintaining Class Action Status Through Trial….    13

        4.    The Amount Offered in Settlement…………………………    14

        5.    The Extent of Discovery Completed and the Stage of
           Proceedings………………………………………………    14

6.      The Experience and Views of Counsel………………………….. 15

7.      The Positive Reaction of the Class Members Favors Final Approval……………………………………………………… 15

8.      Lack of Collusion Among the Parties………………………… 15

V.      CONCLUSION……………………………………………………... 16

# TABLE OF AUTHORITIES

## Cases

*Calderon v. Wolf Firm*,
  No. SACV 16-1622-JLS(KESx), 2018 WL 6843723
  (C.D. Cal. Mar. 13, 2018)……………………………………………………... 14

*Fox v. Iowa Health Sys*.
   No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021)……. 12

*G. F. v. Contra Costa Cty*.,
   No. 13-cv-03667-MEJ, 2015 WL 7571789 (N.D. Cal. July 30, 2015)…………….. 15

*Gordon v. Chipotle Mexican Grill, Inc*.
   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019)... 12

*Hammond v. The Bank of N.Y. Mellon Corp*.,
   No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010)…... 12

*In re Bluetooth Headset Prods. Liab. Litig*.,
   654 F.3d 935 (9th Cir. 2011)……………………………………………………... 11

*Steinmetz v. Brinker Int'l, Inc.*, No. 21-13146 (11th Cir. Sept. 16, 2021)……............ 13

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)………………………………………………... 10

*In re Mego Fin. Corp. Sec. Litig*.,
   213 F.3d 454 (9th Cir. 2000) ....................................................................  9

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig*.,
   266 F. Supp. 3d 1 (D.D.C. 2017)………………………………………………... 12

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ....................................................  12, 14

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*.,
   221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................  15

*Pauley v. CF Entm't*,
   No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953 (C.D. Cal. July 23, 2020)…...  9

*Paz v. AG Adriano Goldschmeid, Inc.*,
    No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016)............ 13

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ..................................................................... 9

*Smith v. Triad of Ala.*, LLC,
    No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)……….... 13

## **Rules**

Fed. R. Civ. P. 23(b)(2) and (3) ..................................................... 2

Fed. R. Civ. P. 23(e)................................................................. 2, 11

Fed. R. Civ. P. 41(a)(1)(A)(i) ..................................................... 4

## **Other Authorities**

4 Newberg on Class Actions § 11.48 (4th ed. 2002) .................................... 15

Illinois Consumer Fraud Act (815 Ill. Comp. Stat. § 505/1. *et seq.*)……………….... 3

Illinois Personal Information Protection Act (815 Ill. Comp. Stat. § 530, *et seq.*)…. 3

Illinois Security Breach Notification laws (815 Ill. Comp. Stat. § 530/10)……….... 3

# I.    **INTRODUCTION**

Plaintiffs Myron Schellhorn, Rodney Allen, Tedda Allen, Lauren Waters, Jeff Harrington, and David Thompson (collectively, "Plaintiffs") submit this Unopposed Motion for Final Approval of Class Action Settlement and Memorandum in Support. On May 10, 2022, this Court certified the proposed class pursuant to Federal Rule of Civil Procedure ("Rule") 23 for settlement purposes, preliminarily approved the settlement terms as fair, adequate, and reasonable, directed that notice be given to the Settlement Class, and scheduled a Final Approval hearing for October 17, 2022. ECF No. 45 (the "Preliminary Approval Order").

Plaintiffs now move for final approval of the settlement and for certification of the Settlement Class. As set forth in the concurrently filed Declaration of Paul Ferruzzi of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Ferruzzi Decl."), the Claims Administrator has implemented an extensive Court-approved Notice Program with direct notice of the settlement delivered by email to the valid email addresses in Defendant's possession and via U.S. first-class mail otherwise. Both the claims deadline and the opt-out/objection deadline have passed and the response from the Settlement Class has been overwhelmingly positive, with the Claims Administrator having received only three exclusions and zero objections from a Settlement Class of nearly 75,000. *See* Ferruzzi Decl., ¶ 16.

The Settlement is fair, adequate, and reasonable and represents a substantial recovery for the Settlement Class. Defendant will provide monetary relief of reimbursement of out-of-pocket expenses and lost time up to $500 per Class Member, reimbursement of extraordinary expenses of up to $3,000 per Class Member, and $50 per California Settlement Subclass Member; will pay to have all Settlement Class members provided with free access to Pango's[1] Financial Shield Services for eighteen months from the Effective Date; and will implement significant data security

---

[11] What was called Aura Financial Shield at the time of the Preliminary Approval Order is now known as Pango Financial Shield.

enhancements designed to better protect Class Members' PII. The Notice plan has been effectuated as per the Court's May 10th Order, providing direct mail and/or email notice with an estimated reach of 99.62%.

The deadline to object or opt out of the settlement was August 8, 2022. As of the filing of this motion, in response to 36,386 direct Summary Notice emails, 38,342 direct Summary Notice postcards, a website, and a toll-free number, no class members objected to the settlement and only three exclusions. The deadline to submit a claim form was September 7, 2022. *See* Ferruzzi Decl., ¶¶ 5, 9, 10, 14 and 16.

As of this filing, which is several days after the Claims deadline of September 7, the Claims Administrator has received 785 claim forms. This represents approximately 1.05 percent of the Settlement Class. Ferruzzi Decl., ¶ 14.

Despite the strength of Plaintiffs' claims, without a settlement the Class would face significant litigation risk. As such, the Class Representatives now move for final approval of the Settlement.

Class Representatives respectfully request the Court enter an order that: (1) finally approves the Settlement Agreement and Release as fair, reasonable, and adequate under Rule 23(e); (2) finally certifies the Settlement Class under Fed. R. Civ. P. 23(b)(2) and (b)(3); (3) finally appoints Myron Schellhorn, Rodney Allen, Tedda Allen, Lauren Waters, Jeff Harrington, and David Thompson as Class Representatives; (4) finally appoints as Class Counsel  M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation as Class Counsel; (5) finds the Notice plan as implemented satisfies Rule 23 and due process; (6) finally appoints Kroll Settlement Administration as the Claims Administrator; and (7) grants further relief as the Court deems just and proper.

## II.    **BACKGROUND**

Inasmuch as Plaintiffs detailed the background of the case in their Motion for Preliminary Approval, Plaintiffs set forth a summary of the case only to the extent relevant to the instant motion.

### A.    Plaintiffs' Allegations and Claims

This litigation arose out of allegations that, between July 19, 2021 and July 25, 2021,  Defendant Timios, Inc.'s ("Timios" or "Defendant") was the target of a criminal cyberattack in which cyber criminals gained unauthorized access to Timios' network and encrypted some of its systems ("Data Incident"). Plaintiffs allege, but Timios denies, that, as a result of this Data Incident, unauthorized users accessed Representative Plaintiffs' and Settlement Class Members' personally identifiable information "PII") including Social Security numbers, driver's license numbers, financial account information, medical information and/or health insurance information. ECF No. 18, First Amended Complaint ("FAC"), ¶¶ 1, 5. Plaintiffs, in the FAC, allege that they were injured by the Data Incident in the following ways: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including, but not limited to, lost time, (iv) deprivation of rights they possess under the Illinois Consumer Fraud Act (815 Ill. Comp. Stat. § 505/1. *et seq.),* Illinois Personal Information Protection Act (815 Ill. Comp. Stat. § 530, *et seq.*), Illinois Security Breach Notification laws (815 Ill. Comp. Stat. § 530/10), and (v) continued, and certainly an increased, risk to their PII, which remains in Timios's possession and is subject to further unauthorized disclosures so long as Timios fails to undertake appropriate and adequate measures to protect the PII.

### B.    The Case Litigation and Settlement

Plaintiffs Myron Schellhorn, Rodney Allen and Tedda Allen filed the initial Complaint in this action on November 3, 2021. The next day, November 4, 2021, a separate putative class action involving the same Data Incident was filed in this Court by Plaintiffs Lauren Waters, Jeff Harrington, and David Thompson. *See Waters, et al. v. Timios,* Case No. 2:21-cv-08709-WAP-JC (C.D. Cal.) ("*Waters*" action). Shortly

thereafter, counsel for Plaintiffs in the two actions decided it was appropriate to join together in an effort to conserve the resources of the parties and the Court. Accordingly, pursuant to stipulation of the Parties and approval of the Court, on March 1, 2022, the First Amended Class Action Complaint ("FAC") was filed in this action naming the Plaintiffs from both this and the *Waters* Action. Then, on March 24, 2022, the *Waters* Action was voluntarily dismissed under Fed. R. Civ. P. 41(a)(1)(A)(i).

Over the course of several months, the Parties engaged in informal, sometimes contentious, settlement negotiations. The parties then agreed to participate in early mediation. The parties engaged Bennett Picker, Esq., a well-regarded private mediator with considerable experience mediating data breach class actions, to preside over the mediation. With the mediation date looming, the parties continued to rigorously pursue settlement negotiations and were able to reach a settlement in principle on almost all terms, except for attorneys' fees and expenses. The parties then took several weeks to finalize the full scope of the settlement agreement including attorneys' fees and expenses (ECF No. 23-1). The parties executed the Settlement Agreement on March 31, 2022. Plaintiffs submitted their Unopposed Motion for Preliminary Approval of Class Action Settlement on March 31, 2022 (ECF No. 22) with this Court granting Preliminary Approval of the Settlement on May 10, 2022 (ECF No. 45).

### C.    Preliminary Approval

Plaintiffs filed their Motion for Preliminary Approval on February 22, 2022. ECF No. 21-22, 31. On May 10, 2022, the Court granted Plaintiffs' Motion for Preliminary Approval (ECF No. 45), certified a nationwide Settlement Class, and directed that notice be issued to Settlement Class Members pursuant to the settlement.

### D.    Notice Period

The Class notice and claims period commenced on May 24, 2022 (ECF No. 45 at 24), and, to date, no Settlement Class Members have objected to the Settlement and only three Settlement Class Members have requested exclusion. Ferruzzi Decl., ¶16.

The deadline for objections and exclusion requests was August 8, 2022, and the deadline to submit claims was September 7, 2022. *Id*., ¶ 14. To date, with the possibility of some claims still being in transit, the claims administrator has received 785 claims from the Settlement Class. *Id*., at ¶ 14.

### III.   THE SETTLEMENT TERMS

#### A.   Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "[A]ll persons to whom Timios mailed notice that between July 19, 2021 and July 25, 2021, Timios was the target of a cyberattack in which third-party criminals gained unauthorized access to Timios' network, encrypted some of Timios' systems, and may have gained unauthorized access to the personal information of consumers." S.A., § 1.27. The Settlement Class contains approximately 74,755 individuals.

In addition, the Settlement creates a California Settlement Subclass, consisting of "all persons residing in California between July 19, 2021 and July 25, 2021 to whom Timios mailed notice that between July 19, 2021 and July 25, 2021, Timios was the target of a cyberattack in which third-party criminals gained unauthorized access to Timios' network, encrypted some of Timios' systems, and may have gained unauthorized access to the personal information of consumers." S.A., § 1.2.; ECF No. 23, Declaration of M. Anderson Berry ISO Ps' Mot. for Preliminary Approval ("Berry Decl.), ¶14.

#### B.   Settlement Benefits – Monetary Relief

The Settlement negotiated on behalf of the Class provides for three separate forms of monetary relief: (1) reimbursement of ordinary expenses and lost time up to $500 per Class Member; (2) reimbursement of extraordinary expenses up to $3,000 per Class Member, and (3) $50 California Settlement Subclass member. S.A., §§ 2.1-2.3.

The first category of payment is designed to provide reimbursement for ordinary out-of-pocket expenses related to the Data Incident and to compensate Class Members for time spent dealing with the effects of the Data Incident. S.A., § 2.1. Ordinary expense reimbursements can be claimed at up to $500 per Class Member. S.A., § 2.1. Notably, this category of reimbursements specifically includes up to three hours of attested to lost time spent dealing with any effects of the Data Incident, compensated at $20 per hour.  S.A., § 2.1. Reimbursable ordinary expenses also include:

(i)    unreimbursed bank fees;

(ii)    unreimbursed card reissuance fees;

(iii)    unreimbursed overdraft fees;

(iv)    unreimbursed charges related to unavailability of funds;

(v)    unreimbursed late fees;

(vi)    unreimbursed over-limit fees;

(vii)    long distance telephone charges;

(viii)    cell minutes (if charged by the minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Data Incident), and text messages (if charged by the message and incurred solely as a result of the Data Incident);

(ix)    unreimbursed charges from banks or credit card companies;

(x)    interest on payday loans due to card cancellation or due to over-limit situation incurred solely as a result of the Data Incident;

(xi)    costs of credit report(s), credit monitoring, and/or other identity theft insurance products purchased by members of the Settlement Class between October 11, 2021 and the data of the Claims Deadline; and

(xii)    other losses incurred by the Settlement Class determined by the Settlement Administrator to be fairly traceable to the Data Incident, including, but not limited to, the cost of postage and gas for local travel. S.A., §2.1.

The second category provides for reimbursement of extraordinary expenses, up to $3,000 per Settlement Class Member, incurred between July 19, 2021 through and including the end of the Claims Deadline for documented unreimbursed out-of-pocket expenses incurred due to the Data Incident. S.A., § 2.2.

In addition to the above, California Settlement Subclass Members are eligible for a separate, $50 payment in recognition of the superior statutory rights afforded under California law. The award to California Settlement Subclass Members who submit a Valid Claim shall be $50. S.A., § 2.3.

### C.    Fraud Protection Settlement Benefits – Aura/Pango Financial Shield

In addition to the potential cash benefits outlined above, all Settlement Class members were provided access to Pango's identity theft protection services ("Financial Shield") for a period of eighteen (18) months from the Effective Date. S.A., § 2.4.

Financial fraud coverage will be provided through Financial Shield, which focuses on protecting financial assets, freezing identity at 10 different Bureaus including the three main credit bureaus, home and property title monitoring, income tax protection and other services. This service is integrated with Early Warning Services ("EWS") to provide real-time monitoring of financial accounts. Financial Shield also carries a $1 million policy protecting the subscriber. These services will be provided to all Settlement Class members who elect to subscribe to Financial Shield, free of charge. Berry Decl., ¶20; S.A., § 2.4 .

Financial Shield Services, like those provided by the Settlement Agreement, retail for $135 per year per person. Berry Decl., ¶21. Thus, the value of these services for 18 months is at least $202.50 per person. Because all 74,755 Settlement Class Members were eligible to receive this benefit, the value of this benefit for the Class could be valued at over $15 million ($202.50 x 74,755 class members), which is approximately what it would cost for each class member to individually purchase this

product on the open market. However, even if only 5 percent of the Class (or approximately 3,738 class members) uses the Financial Shield services, the value of that benefit equates to approximately $756,945 ($202.50 x 3,738). *Id.*

### D. Equitable Settlement Terms/Injunctive Relief

Additionally, Timios agrees to implement and/or maintain significant data security measures detailed at Section 2.6 of the Settlement Agreement. These changes benefit members of the Settlement Class whose information remains in Timios's possession and will benefit other customers of Timios's as well.

### E. Attorneys' Fees and Expenses

Plaintiffs are separately seeking a combined award of attorneys' fees and expenses not to exceed $215,000 in the previously filed Motion for Attorneys' Fees, Expenses, and Service Awards. (ECF No. 46.) As described in Plaintiffs' Motion for Attorneys' Fees, Plaintiffs' Counsel accrued a combined lodestar of more than $151,734.85 at the time of filing the Motion for Attorneys' Fees. Thus, the requested fee represents a lodestar multiplier of 1.42, at most. Such calculations do not include the lodestar accrued in bringing the instant motion or attending the final approval hearing.

While the Ninth Circuit does not require a "crosscheck" of requested fees sought under the lodestar approach using the percentage of the fund method, such a crosscheck confirms the reasonableness of Plaintiffs' request. Using the conservative estimate set forth above about the value of the automatic Pango Financial Shield benefit ($756,945) if merely 5 percent of the Settlement Class activates the benefit automatically provided; and the conservative estimate of the value of the benefits for ordinary out-of-pocket losses up to $500, lost time at a rate of $20 per hour up to three hours, extraordinary out-of-pocket losses up to $3,000 per Settlement Class Member and the $50 payment per California Settlement Subclass Member for statutory damages of $373,775 in monetary settlement benefits. ECF 23, Berry Decl., ¶ 39, n.2.; and the cost of class

administration ($87,000), the requested fees are approximately 15 percent of the settlement benefit created. This compares favorably to the "25% benchmark" used in the Ninth Circuit, and far below the 1/3 fees often approved. *Pauley v. CF Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020), *citing Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery).

### F.    Service Awards to Representative Plaintiffs

Representative Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to proposed Settlement Class Counsel. They have been personally involved in the case and support the Settlement. Berry Decl., ¶ 43. Representative Plaintiffs are separately petitioning the Court for awards of $2,500 each in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class in the concurrently filed Motion for Attorneys' Fees and Costs and Service Awards. *See* S.A., § 7.3.

### G.    Notice to the Class

The Court's Preliminary Approval Order appointed Kroll Settlement Administration ("Kroll") to serve as the Claims Administrator and provide notice to the Settlement Class. ECF No. 45, at 4. Settlement Class Members received direct notice via either email or U.S. mail where the emails were unavailable or bounced back as undeliverable. Kroll estimates that direct notice reached 99.62 percent of the Class. Ferruzzi Decl., ¶ 13 (showing 281 Settlement Class Members unable to be reached through email or mail, out of a class of 74,728). Additionally, Kroll posted the long form notice on a dedicated settlement website, www.Timiossettlement.com, along with other important documents. Ferruzzi Decl., ¶ 6. Furthermore, Settlement Class Members were able to call a toll-free number with interactive voice response, FAQs to address their inquiries. Ferruzzi Decl., ¶ 7.

**H.    Claims, Requests for Exclusion and Objections**

The deadline to object or opt out of the settlement was August 8, 2022. As of the filing of this motion, in response to 36,386 direct Summary Notice emails, 38,342 direct Summary Notice postcards, a website, and a toll-free number, no individuals have objected to the settlement and only three exclusions. Ferruzzi Decl., ¶¶ 9, 10, 14, 16.

The deadline to submit a claim was September 7, 2022. As of the date of this filing, the Claims Administrator has received 785 claim forms. Ferruzzi Decl., ¶ 14. This amounts to a 1.05 percent claims rate, which compares favorably to the claims rates in other data breach class action settlements within this Circuit. *See*, for example:

| Case Title | Approx. Class Size | No. of Claims | Claims Rate |
|---|---|---|---|
| *In Re: Hanna Andersson and Salesforce.com Data Breach Litigation, No.* 3:20-cv-00812-EMC (N.D. Cal.), ECF 81 at 1 | 192,556 | 2,802 | 1.4% |
| *Corona v. Sony Pictures Entertainment, Inc*., No. 2:14-cv-9600 (C.D. Cal.), ECF 145-1 at 11 n.8 & ECF 164 at 2 | 435,000 | 3,127 | 0.7% |
| *In re LinkedIn User Privacy Litig*., No. 12-cv-03088-EJD (N.D. Cal.), ECF 122 at 2 & ECF 145-2 at ¶ 12 | 6,400,000 | 47,336 | 0.7% |
| *In re Banner Health Data Breach Litigation*, No. 2:16-cv-2696 (D. Ariz.), ECF 170 at 1, and ECF 195-3 at ¶ 12 | 2,900,000 | 39,091 | 1.3% |

**I.    Settlement Notice and Administration Expenses**

At preliminary approval, Kroll estimated that notice and administration costs would total approximately $86,000. Kroll expects that its total charge will increase by only $1,000 above its initial estimate to a total of $87,000. Ferruzzi Decl., ¶ 17.

# IV.  ARGUMENT

## A.  The Settlement Should Be Finally Approved

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." For a settlement to be approved, the Court must determine, after holding a hearing, that it is fair, adequate, and reasonable.

The Ninth Circuit looks to nine factors in making this determination: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

### 1.  The Strength of Plaintiffs' Case

Plaintiffs believe they have a strong case for liability. As described in Plaintiffs' Motion for Preliminary Approval, Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Timios's data security was inadequate and that Defendant is likely to be found liable under at least some of the liability theories and statutory and common law claims Plaintiffs pled in their FAC. Berry Decl., ¶ 48. However, given the heavy obstacles and inherent risks Plaintiffs' face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors final approval of the settlement. *Id.*

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is a strong one, they recognize all cases are subject to substantial risk. This case involves a proposed class of approximately 75,000 individuals (each of whom, Timios has argued, would need to establish injury and legally cognizable harm); a complicated and technical factual overlay; and a sympathetic and motivated Defendant that already has provided some relief to its potentially affected customers (in the form of credit monitoring offered in the Notice of Data Breach letters).

Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class in an especially risky arena. As one federal district court recently observed in finally approving a settlement with similar class relief:  Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). Data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.,* No. 14CV1372DMS(DHB), 2016 WL 4427439, at *t (S.D. Cal. Feb. 29, 2016). Thus, this factor favors final approval.

### 3.    The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs' case is still in the pleadings stage, the Court has not yet certified any class treatment of this case. Absent settlement, class certification in consumer data breach cases has only occurred in a few cases. *See, e.g., Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *15 (M.D. Ala. Mar. 17, 2017), on reconsideration in part, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017). Even when certification is granted, there are appeals. *See Steinmetz v. Brinker Int'l, Inc.*, No. 21-13146 (11th Cir. Sept. 16, 2021) (the first payment card data breach case to obtain class certification; it is now on appeal at the Eleventh Circuit). While certification of additional consumer data breach classes may follow, the dearth of precedent adds to the risks posed by continued litigation.

### 4.    The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class Members. Class Members are eligible to make a claim for $500 in reimbursements for expenses and lost time, up to $3,000 in reimbursements for extraordinary expenses, and California Settlement Subclass Members are eligible for an additional $50 statutory damages award. All Settlement Class Members received access to Pango's (formally Aura) Financial Shield for 18 months (a value of approximately $202.50 per Class Member). Class Members are also the beneficiaries of the data security improvements Defendant has taken to better protect their PII in the future.

This settlement is a strong result for the Class, and as discussed herein is in line with other approved settlements in cases involving data breaches of similar scope. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See Id*. Accordingly, this factor favors approval.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Although the parties have not engaged in formal discovery, Class Counsel's experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and enormous financial resources to come up to speed on the subject area. Berry Decl., ¶ 46. Accordingly, Plaintiffs are well informed about the strengths and weaknesses of this case.

### 6.  The Experience and Views of Counsel

Class Counsel has substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Berry Decl., ¶¶ 45-46. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel endorses the Settlement without reservation. *Id.*, ¶ 51.

### 7.  The Positive Reaction of the Class Members Favors Final Approval

The deadline to object or opt out of the settlement was August 8, 2022. Notably, the Claims Administrator did not receive a single objections and only three individuals opted-out. Ferruzzi Decl., ¶ 16. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004); 4 NEWBERG ON CLASS ACTIONS, § 11:48 ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]"). The fact that no Settlement Class Members, objected indicates overwhelming support for the settlement and strongly favors approval.

### 8.  Lack of Collusion Among the Parties

The parties negotiated a substantial package of Settlement benefits and did not commence discussion of fees until agreement on the substantive portions of the class resolution had been reached. Both the class portion of the resolution and the fees were negotiated at arm's-length. Berry Decl., ¶ 9. The Court can be assured that the negotiations were not collusive. *See G. F. v. Contra Costa Cnty.,* No. 13-CV-03667-MEJ, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015) (working with neutral mediators is "a factor weighing in favor of a finding of non-collusiveness") (internal quotation marks and citation omitted).

The parties negotiated a substantial, multifaceted Settlement, as described above. The parties did not negotiate attorneys' fees until agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees were negotiated during periodic arm's-length negotiations. Furthermore, Class Counsel and Timios's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Therefore, the Court can be assured that the negotiations were not collusive.

## V.    CONCLUSION

For all the foregoing reasons, and for those set forth in Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement,  Plaintiffs respectfully request that the Court certify the class, grant final approval of the Settlement, and enter the proposed order filed herewith at Exhibit A.

Date: September 16, 2022                Respectfully Submitted,

                                        */s/M. Anderson Berry*
                                        M. ANDERSON BERRY (SBN 262879)
                                        **CLAYEO C. ARNOLD,**
                                        **A PROFESSIONAL LAW CORP.**
                                        865 Howe Avenue
                                        Sacramento, CA 95825
                                        Tel: (916) 239-4778
                                        Email: aberry@justice4you.com

                                        *Attorney for Plaintiffs and the Proposed Classes*