**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Myron Schellhorn et al,<br><br>        Plaintiffs,<br><br>    v.<br><br>Timios, Inc.,<br><br>        Defendant. | Case No. 2:21-cv-08661-VAP-JCx<br><br>**Order GRANTING Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Expenses, and Service Awards (Doc Nos. 46-1, 47-1)** |

Before the Court is Plaintiffs Myron Schellhorn, Rodney Allen, Tedda Allen, Lauren Waters, Jeff Harrington, and David Thompson's (collectively, "Plaintiffs") unopposed Motion for Final Approval of Class Action Settlement (Mot. for Settlement Approval, Doc No. 47-1), Motion for Attorneys' Fees, Expenses, and Service Awards (Mot. for Attorneys' Fees, Doc. No 46-1), and Supplemental Motion for Attorneys' Fees, Expenses, and Service Awards (Suppl. Mot. for Attorneys' Fees, Doc. No. 51.)

After considering all the papers filed in support of, and in opposition to, the Motions, as well as the arguments advanced at the hearing, the Court **GRANTS** the Motion for Final Approval of Class Action Settlement and **GRANTS IN PART** the Motion and Supplemental Motion for Attorneys' Fees, Expenses, and Service Awards.

## I.  BACKGROUND

**A.  Procedural History**

Plaintiffs Myron Schellhorn, Rodney Allen, and Tedda Allen filed a Class Action Complaint against Timios, Inc. ("Defendant") on November 3, 2021.  (Doc. No. 1.)  Plaintiffs Lauren Waters, Jeff Harrington, and David Thompson filed a similar action against Defendant on November 4, 2021.  *See Waters, et al. v. Timios*, No. 2:21-cv-08709-VAP-(JCx) (C.D. Cal.).  The Court joined the two actions, and on March 1, 2021, Plaintiffs filed a First Amended Complaint ("FAC").  (Doc. No. 18.)

The FAC alleges that Defendant suffered a data breach between July 18, 2021, and Jul 25, 2021, resulting in the disclosure of Plaintiffs' personal identifiable information ("PII").  (FAC ¶¶ 27-45.)  Accordingly, the FAC asserts the following claims against Defendant: 1) negligence; 2) negligence per se; 3) breach of confidence; 4) breach of implied contract; 5) intrusion into private affairs and invasion of privacy; 6) violation of the Illinois Consumer Fraud Act; 7) violations of the Illinois Personal Information Protection Act; 8) violation of Illinois's Security Breach Notification Laws; 9) unjust enrichment; and 10) declaratory judgment.  (*Id.* ¶¶ 180-308.)

The parties engaged in informal settlement negotiations for several months.  (Mot. for Settlement Approval at 4.)  Although the parties engaged private mediator Bennett Picker, Esq., they were able to reach a settlement before mediation.  (*Id.*)  The parties finalized the joint Settlement Agreement ("Settlement Agreement" or "SA") on March 31, 2022.  (*Id.*; SA, Doc. No. 32-1.)  The Court granted Preliminary Approval of the Class Action Settlement

on May 10, 2022.  (Doc. No. 45.)  Plaintiffs now move for Final Approval of Class Action Settlement and for Attorneys' Fees, Expenses, and Service Awards.

**B.  Settlement Class**

The Settlement Class, as defined in the Settlement Agreement, consists of:

> [A]ll persons to whom Timios mailed notice that between July 19, 2021 and July 25, 2021, Timios was the target of a cyberattack in which third-party criminals gained unauthorized access to Timios' network, encrypted some of Timios' systems, and may have gained unauthorized access to the personal information of consumers.

(SA § IV 1.27.)  The Settlement Class comprises approximately 74,755 persons ("Class Members") who may have had their PII disclosed because of the data breach.  (Mot. for Settlement Approval at 5.)

The California Settlement Subclass, as defined in the Settlement Agreement, consists of:

> [A]ll persons residing in California between July 19, 2021 and July 25, 2021 to whom Timios mailed notice that between July 19, 2021 and July 25, 2021, Timios was the target of a cyberattack in which third-party criminals gained unauthorized access to Timios' network,

encrypted some of Timios' systems, and may have gained unauthorized access to the personal information of consumers.

(SA § IV 1.2.)

**C.  Settlement Terms**

The Settlement Agreement provides to those Class Members who submit a valid claim form: (1) reimbursement of out-of-pocket expenses and lost time of up to $500; (2) reimbursement of extraordinary expenses of up to $3,000; (3) $50 if the Class Member is also a member of the California Settlement Subclass; and (3) free identity theft protection services for eighteen months.  (SA §§ IV 2.1-2.4.)

Under the Settlement Agreement, Class Members must submit claim forms within 120 days of preliminary approval,[1] and the Claims Administrator shall accept or reject such claim forms within 30 days of receipt.  (*Id.* §§ IV 1.15, 2.2, 2.5.3.)  Class Members may dispute a claim decision with a claims referee, who shall make a ruling within 15 days of the dispute.  (*Id.* § IV 2.5.5.)  The Claims Administrator will issue checks for valid claims within 60 days of the final approval of the Settlement Agreement, or within 30 days that the claim is approved, whichever is later.  (*Id.* § IV 8.2.)

---

[1] The Settlement Agreement requires Class Members to submit a claim form "on or before the 90th day after the Notice of Commencement Date." (SA § IV 2.2.)  The Notice of Commencement Date "means thirty days following entry of the Preliminary Approval Order."  (*Id.* § IV 1.15.)

4

The Settlement Agreement entitles each named Plaintiff to a Service Award of $2,500.  (*Id.* § IV 7.3.)  Class Counsel may seek an award of $215,000 for attorneys' fees and costs.  (*Id.* § IV 7.2.)  An order of the Court modifying or reducing the amount of attorneys' fees, costs, expenses, or service awards does not constitute grounds for cancellation or termination of the Settlement Agreement.  (*Id.* § IV 9.4.)

Finally, Plaintiffs and members of the Settlement Class release any future related claims against Defendant.  (*Id.* § IV 6.)

## II.   LEGAL STANDARD

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court must engage in a two-step process to approve a proposed class action settlement.  First, the court must determine whether the proposed settlement deserves preliminary approval.  *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Second, after notice is given to Class Members, the Court must determine whether final approval is warranted.  *Id*.  A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In the Ninth Circuit, courts must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable: (1) the strength of the plaintiffs' case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the Class Members to the proposed settlement. *Torrisi*, 8 F.3d at 1375; *accord Hanlon*, 150 F.3d at 1026. "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). When "the parties negotiate a settlement agreement before the class has been certified, settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Because a class was not certified prior to the parties' settlement, the Court applies a "higher standard" and conducts a "more probing inquiry" in evaluating the fairness of the Settlement Agreement. Further, the Court neither presumes the Settlement Agreement is fair nor that it is the product of non-collusive, arms-length negotiations in evaluating the applicable factors. *See Saucillo v. Peck*, 25 F.4th 1118, 1131 (9th Cir. 2022).

## III. DISCUSSION

**A. Plaintiffs' Motion for Final Approval of Class Action Settlement**

    1.    <u>Product of Serious, Informed, Non-Collusive Negotiations</u>

To approve the Settlement Agreement at this stage, the Court must first find that it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Hanlon*, 150 F.3d at 1027.

The Settlement Agreement appears to be the product of arms-length negotiations. This case was filed on November 3, 2021, (Doc. No. 1), and since then the Parties have spent several months engaging in negotiations prior to reaching a settlement. (Mot. for Settlement Approval at 4.)

Moreover, the Court has carefully scrutinized the Settlement Agreement and finds no signs of overt or subtle collusion. The Settlement Agreement provides a method by which Class Members can recover reasonable compensation for any expenses they might have incurred from the alleged data breach. It also provides identity theft protection services designed to mitigate the risk of future injury. Additionally, because the parties "did not negotiate attorneys' fees until agreement on all substantive portions of the class resolution had been reached," (*Id.* at 16), there is little risk that Defendant agreed to "excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (citation and quotation marks omitted). Although the Court ultimately awards Class Counsel less than the requested $215,000 in attorneys' fees,

*infra*, the requested fees are not excessive in light of the potential recovery by Class Members and do not support an inference of collusion.

The Court therefore finds that the parties engaged in arm's length, serious, informed, and non-collusive negotiations. This factor weighs in favor of approval.

### 2. Strength of Plaintiff's Case and Future Risk

Plaintiffs' FAC alleges claims for: 1) negligence; 2) negligence per se; 3) breach of confidence; 4) breach of implied contract; 5) intrusion into private affairs and invasion of privacy; 6) violation of the Illinois Consumer Fraud Act; 7) violations of the Illinois Personal Information Protection Act; 8) violation of Illinois's Security Breach Notification Laws; 9) unjust enrichment; and 10) declaratory judgment. (FAC ¶¶ 180-308.) Although Plaintiffs may be able to prove their claims, the outcome is still far from certain as "[d]ata breach cases . . . are particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019). Moreover, regardless of the final outcome, the case would likely require extensive continued litigation absent the Court's approval of the Settlement Agreement. As the Court previously noted, the future litigation risks in this case weigh in favor of settlement approval. (Doc. No. 45, at 16-17.)

### 3. Amount Offered in the Settlement

Under the Settlement Agreement, Class Members may file a claim form for: (1) reimbursement of out-of-pocket expenses and lost time of up to

$500; (2) reimbursement of extraordinary expenses of up to $3,000; (3) $50 if the Class Member is also a member of the California Settlement Subclass; and (3) free identity theft protection services for eighteen months.  (SA §§ IV 2.1-2.4.)  The Court finds that the reimbursement amounts adequately compensate Class Members for any harm they may have suffered as a result of the data breach and finds that the provision of identity theft protection services reasonably mitigates the risk of future harm.  As such, the Settlement Agreement achieves a fair result.

The Court must nevertheless "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Id.* at 964.  As discussed in more detail below, although the Court awards Class Counsel less than the $215,000 they ask for, the requested fees are not so excessive as to support the inference that "the defendant obtained an economically beneficial concession with regard to the merits provisions." *Id.*  This factor therefore weighs in favor of approval.

  4.  <u>Extent of Discovery Completed and Stage of the Proceedings</u>

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As noted above, the parties litigated diligently since November 2021, having engaged in months of negotiations, *supra*. The parties, however, have not engaged in formal discovery, with Class Counsel relying instead on "experience in similar types of privacy and data protection practices." (Mot. for Settlement Approval at 14.) Accordingly, the Court finds that this factor does not weigh in favor of or against approval.

### 5. Experience and Views of Counsel

Class Counsel have ample experience litigating class actions similar to this case and thus have demonstrated the ability to prosecute vigorously on behalf of the Class Members. (*See* Berry Decl., Doc. No. 46-2, ¶¶ 2-9, Exs. B-E.) Accordingly, the Court finds this factor weighs in favor of approval.

### 6. Presence of a Governmental Participant

As there is no governmental participant in this action, this factor is irrelevant for the purposes of final approval.

### 7. The Reaction of the Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

Following preliminary approval of the settlement by the Court, the Claims Administrator distributed the approved class notice to the Class Members. (*See* Ferruzzi Decl., Doc. No. 47-2, ¶¶ 9-13.) During the allotted response period, the Claims Administrator received no objections and only three requests for exclusion. (*Id.* ¶¶ 16.) Given the absence of any objections and the small number of requests for exclusion, the Class response is favorable overall. Accordingly, this factor weighs in favor of approval.

### 8. Balancing the Factors

As most of the relevant factors favor approval, and none weigh against, the Court finds that the proposed Settlement Agreement is fair, reasonable, and adequate and **GRANTS** final approval of the Settlement Agreement.

### B. Plaintiff's Motion for Attorneys' Fees, Expenses, and Service Awards

When evaluating attorneys' fees, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)). When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291

F.R.D. 443, 455 (E.D. Cal. May 14, 2013); see *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The Ninth Circuit has held that "attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). When the case "involves a settlement that was negotiated at arms length," this rule applies even if "the unclaimed money in the fund . . . will be returned to the defendants." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

Although Class Counsel do not seek fees from a common fund, they seek fees under a common fund theory. They argue that the $215,000 in fees they seek is reasonable because it represents less than 1.4% of the Class Members' possible recovery. (Suppl. Mot. for Attorneys' Fees at 4). If every one of the 74,755 Class Members claimed the identity protection they were offered, for example, they would have received $15,137,887.50 in benefits. (*Id.*)

Class Counsel do not suggest that they are entitled to 25% of this potential recovery, or $3.78 million. Indeed, the amount of hours Class Counsel spent drafting a complaint and negotiating a settlement do not justify such a large amount, *see infra*. Instead, Class Counsel essentially seek a 0.057x multiplier on the standard common fund benchmark. As even a small change in the multiplier would result in a relatively large change to

the attorneys' fees, the Court finds it more appropriate to compute the attorneys' fees by applying the lodestar method than to estimate an exact multiplier.

1. Lodestar

The lodestar is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d, 359, 363 (9th Cir. 1996). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *Roberts v. City and County of Honolulu*, 2019 DJDAR 8807–08 (9th Cir. 2019). The "relevant community" for purposes of the "prevailing market rate" is the "forum in which the district court rests." *Id.* at 979.

The Court has reviewed Class Counsel's billing summaries proposing a lodestar amount of $151,734.85. The summaries report 236.58 hours spent on this case at hourly rates ranging from $125 to $208 for non-attorneys and $325 to $575 for associates, and $695 to $919 for partners. (*See* Berry Decl. ¶ 28, Ex. A.) Class Counsel point to other data breach class actions where they claim similar rates have been approved. (*Id.* ¶ 30.) The cited cases, however, computed attorneys' fees using a percentage-of-

the-fund method and did not explicitly approve Class Counsel's hourly rates. To the extent that the decisions reviewed Class Counsel's billing statements, such reviews were cursory and done only as part of a lodestar cross-check. *Cf. Schiller v. David's Bridal, Inc.*, No. CV-10-00616-AWI, 2012 WL 2117001, at *20 (E.D. Cal. June 11, 2012) ("Where the use of the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours.").

Class Counsel do not support their hourly rates with survey evidence or declarations from other attorneys in the field. *See Widrig v. Apfel*, 140 F.3d 1207, 1209-10 (9th Cir. 1998); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996) (noting that declarations from attorneys in the community can provide adequate proof of the reasonableness of counsel's rates). Based on the evidence submitted by Class Counsel, including law firm and attorney profiles, as well as the Court's general experience with prevailing rates for similar types of litigation, the Court does not find the $800 and $919 hourly rates for David Lietz and the $740 hourly rate for M. Anderson Berry to be reasonable. Instead, the Court finds Mr. Lietz and Mr. Berry qualified to bill at $700 an hour. This adjustment in their hourly rates results in a modified lodestar amount of $144,893.63.

The summaries provided by Class Counsel are not itemized in a way that allow for a detailed review of the hours spent. As this type of "block billing" may "increase time by 10% to 30%," *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (citing The State Bar of California

Committee on Mandatory Fee Arbitration, Arbitration Advisory 03–01 (2003)), the Court imposes an across-the-board reduction of 10% on Class Counsel's requested hours resulting in a lodestar amount of $130,404.27.

At the October 17, 2022 hearing for Plaintiffs' Motion for Attorneys' Fees, the Court permitted Class Counsel to file a Supplemental Motion for Attorneys' Fees documenting additional fees incurred by Class Counsel since they filed their first Motion for Attorneys' Fees on July 25, 2022. The Supplemental Motion reports 36.7 hours spent for a total fee of $22,658.00 at the Court's adjusted hourly rates.[2] (Berry Suppl. Decl., Doc. No. 51-1, ¶¶ 20, 26.) As Class Counsel again failed to break down how these hours were spent, the Court reduces the hours by 10%, resulting in a lodestar amount of $20,392.20. The total lodestar amount is $150,796.47.

There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan v. Multnomah County*, 815 F.2d at 1262 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). Class Counsel, however, suggest that a 1.42 lodestar multiplier is appropriate in this case. (*See* Mot. for Attorneys' Fees at 15.)

An upward adjustment of the lodestar is appropriate only in extraordinary cases, such as when the attorneys faced exceptional risks of not prevailing or not recovering any fees. *Chalmers v. City of Los Angeles*,

---

[2] At the hearing, the Court declined to permit Class Counsel to provide additional evidence supporting higher rates in their Supplemental Motion for Attorneys' Fees, noting that any such evidence should have been included in their original Motion for Attorneys' Fees.

796 F.2d 1205, 1212 (9th Cir. 1986).  In determining whether an upward adjustment is appropriate, courts consider: time and labor required; the novelty and difficulty of the questions involved; the skill needed to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorney; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975).  The Court, however, does not need to discuss all of these factors "because most are not matters on which anything is at issue or needs to be said," *McGinnis v. Ky. Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th Cir. 1994), and many of the *Kerr* factors are subsumed within the lodestar calculation, *see Jordan v. Multnomah County*, 815 F.2d at 1262.

The facts in this case do not warrant an upward adjustment of the lodestar.  Although the case, had it proceeded, likely would have involved complex litigation, Class Counsel's work appears to have consisted primarily of drafting a complaint and negotiating a settlement.  This type of work is not particularly novel or difficult.  Class Counsel claim to have spent over 200 hours performing this work, but these hours are adequately compensated by the reasonable hourly rate set by the Court above.  And while Class Counsel have achieved a reasonable and fair result for the Class Members, the result is not so extraordinary as to justify a departure from the standard lodestar.

Accordingly, the Court **GRANTS** Class Counsel attorneys' fees in the amount of $150,796.47.

2. Costs

Class Counsel seek reimbursement of $2,531.71 in litigation costs. (Mot. for Attorneys' Fees at 17). These include $1,329.08 in filing fees, service fees, delivery fees, copy fees and research fees incurred by the Arnold Law Firm and Markovits, Stock & DeMarco, LLC. (*See* Berry Decl. ¶ 29, Ex. A.) Class Counsel, however, do not itemize the remaining $1,202.63 in costs. In its prior order granting preliminary approval of the Settlement Agreement, the Court cautioned that it was "unlikely to approve the litigation costs" requested by Class Counsel, (Doc. No. 45, at 21), because Class Counsel had not "attached any accounting of past costs or expenses," (*Id.* at 19.) As Class Counsel has not remedied this deficiency with respect to $1,202.63 in costs, the Court only approves a reimbursement for the amount for which an accounting has been made, i.e., $1,329.08.

In their Supplemental Motion for Attorneys' Fees, Class Counsel seek an additional $509.12 for travel and research costs incurred between July 21, 2022, and October 17, 2022.[3] (Suppl. Mot. for Attorneys' Fees at 9). The Court approves these costs.

---

[3] Class Counsel also ask the Court for leave to file additional supplemental briefing in support of their lodestar, including costs and expenses. (Suppl. Mot. for Attorneys' Fees at 10). As the Court has already granted leave to file a supplemental motion on the matter, the Court declines to do so for a second time.

### 3. Service Awards

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

"The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (alterations in original).

Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995). "Courts have generally found that $5,000 incentive payments are reasonable." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008) (citations omitted).

Plaintiffs Myron Schellhorn, Tedda Allen, and Rodney Allen aver that they participated in the litigation from its inception through settlement and have each spent between four and seven hours researching their rights and those of the class; researching their responsibilities and duties as class representatives; communicating with Class Counsel; producing documents related to their interactions with Defendants; and reviewing the complaints and declarations filed in this case.  (Doc Nos. 51-3, 51-4, 51-5.)  Plaintiffs Lauren Waters, Jeff Harrington, and David Thompson aver that they spent numerous hours communicating with Class Counsel.  (Doc Nos. 51-6, 51-7, 51-8.)  The Court finds that Plaintiffs' participation in the litigation justify service awards, and accordingly **APPROVES** a $2,500 service award for each of the named plaintiffs.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion for Final Approval of Class Action Settlement and **GRANTS IN PART** the Motion for Attorneys' Fees, Expenses, and Service Awards.  It awards attorneys' fees in the amount of $150,796.47, costs in the amount of $1,838.20, and service awards in the amount of $15,000 ($2,500 for each of the six named plaintiffs).

**IT IS SO ORDERED.**

Dated:     11/9/22

*Virginia A. Phillips*

Virginia A. Phillips
Senior United States District Judge